No. 78,722

MICHAEL A. BANKES, *Appellant*, v. CHARLES SIMMONS, *et al.*, *Appellees.*

(963 P.2d 412)

Opinion filed June 5, 1998.

*Michael K. Lehr*, of Wichita, argued the cause and was on the brief for appellant.

*Timothy G. Madden*, chief legal counsel, Kansas Department of Corrections, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: This is a habeas corpus action brought by Michael A. Bankes, a prisoner in the Hutchinson Correctional Facility (HCF). Bankes was convicted of indecent liberties with a child and sentenced to 4 to 15 years in prison in 1990. Some time after his sentencing, Bankes' unit team at the HCF recommended that he participate in the Sexual Abuse Treatment Program (SATP). In order to be admitted into SATP, Bankes was required to admit

guilt for the crime of which he was convicted. This admission of guilt, along with any other information which Bankes conveyed to SATP counselors, could be turned over to authorities and used against Bankes in future proceedings. Due to this required admission of guilt, Bankes refused to participate in SATP. As a result of his refusal to participate in SATP, Bankes' privilege incentive level was reduced from a level 2 to a level 1, pursuant to the Kansas Department of Corrections Internal Management Policies and Procedures (IMPP) Rule 11-101 (1998). Because of this reduction in his privilege incentive level, Bankes lost his personal TV and certain canteen privileges. Moreover, for each program review period in which Bankes refused to participate in the recommended SATP, he did not receive any good time credits pursuant to K.A.R. 44-6-124. This denial of good time credits resulted in an extension of Bankes' parole eligibility date and his conditional release date. Both IMPP 11-101 and K.A.R. 44-6-124 were amended to create this outcome after Bankes had been sentenced and served part of his sentence. Based on these consequences for his refusal to participate in SATP, Bankes filed a petition for habeas corpus in Reno County District Court, alleging that K.A.R. 44-6-124 violated his privilege not to incriminate himself and constituted an ex post facto law. The Reno County District Court dismissed Bankes' habeas corpus petition for failure to state a claim. Bankes appealed this ruling to the Court of Appeals. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

Bankes' 4- to 15-year sentence did not include any order for Bankes to participate in any kind of psychological or psychiatric treatment for sexual offenders. The Kansas Department of Corrections (KDOC) placed Bankes in the HCF. At the time of his placement with the HCF, Bankes was not ordered to participate in any kind of psychological or psychiatric counseling for sexual offenders.

Further, at the time Bankes was sentenced to prison, KDOC had set out regulations in K.A.R. 44-5-104 and K.A.R. 44-5-105. K.A.R. 44-5-105 required that all inmates incarcerated in a KDOC facility be subject to a program plan conducted by a unit team within 1 month of an inmate's admission into prison. The plan

could assign an inmate to participate in a certain program, but "the inmate [could] not be penalized for refusal to participate in a formal program plan." K.A.R. 44-5-104 classified the security level of the inmate. The inmate's security level determined his supervision requirements and his allowable privileges and freedoms. The factors necessary to determine an inmate's security level, pursuant to K.A.R. 44-5-104, and the supervision and privileges associated with each level were set out in the Secretary of Corrections' Internal Management Policies and Procedures manual (IMPP).

On February 9, 1993, and July 11, 1994, Bankes' program plan was reviewed by his unit team. These reviews did not order Bankes to attend a program for sexual offenders, and it classified Bankes as a medium security inmate pursuant to K.A.R. 44-5-104.

Good time credits are applied to an inmate's minimum sentence to determine his or her parole eligibility date and are applied to the inmate's maximum sentence to determine his conditional release date. K.A.R. 44-6-101(g), (m); K.A.R. 44-6-108. Upon reaching the conditional release date, an inmate is entitled to be released. See K.S.A. 22-3718; *Beck v. Kansas Adult Authority*, 241 Kan. 13, 29, 735 P.2d 222 (1987).

K.A.R. 44-6-108(c) (1989), which was in effect when Bankes committed his crime, stated, in pertinent part, that "[t]o establish the conditional release date, good time credits, not forfeited, *shall be presumed earned* and shall be applied to the maximum sentence term when first computed." (Emphasis added.) Thus, it was presumed for the purpose of conditional release that the inmate earned all available good time credits, and his or her conditional release date was predicated on that presumption. For parole eligibility, on the other hand, no such presumption applied, and the credits were tallied as earned to establish parole eligibility. See K.A.R. 44-6-108(b) (1989).

K.A.R. 44-6-124 (1989) provided guidelines for awarding good time credits *for parole eligibility*. No guidelines for the award of good time credits for conditional release were necessary, as 100% was presumed. The regulation stated:

"(1) Inmates with no class I offenses during the review period shall receive at least 50% of good time credits allocated for that period.

· "(2) Inmates with no class I or II offenses during the review period shall receive at least 60% of the good time credits allocated for that period.

"(3) Inmates with no class I, II, or III offenses during the review period shall receive at least 70% of the good time credits allocated for that period.

"(4) Inmates with no class I, II, III or IV offenses during the review period shall receive at least 80% of the good time credits allocated for that period.

"(5) The balance of the credits above the percentages listed in paragraphs (a)(1) to (a)(4) shall be awarded by the unit team based on factors of good work, behavior, and on other performance factors related to effective rehabilitation of the inmate." K.A.R. 44-6-124(a) (1989).

The regulation went on to further provide that the unit team had the discretion to refuse to award all or part of *the portion of credits for which it had discretion* based on an inmate's refusal to participate in recommended programs. K.A.R. 44-6-124(b) (1989).

K.A.R. 44-6-125(b) provided for the forfeiture of those good time credits "earned" for parole eligibility as well as those used to "create the conditional release date." It stated:

"Forfeit only on minimum until parole eligibility. Prior to parole eligibility, forfeited good time credits shall be subtracted from the amount of good time credits earned toward the parole eligibility only, and not from those credits used to create the conditional release date. After parole eligibility is established, forfeited credits shall be subtracted from the credits used to form the conditional release date." K.A.R. 44-6-125(b)(1989).

Thus, for purposes of parole eligibility, an inmate under the system as it existed at the time of Bankes' conviction was forced to earn his or her good time credits toward parole eligibility, while good time credits for a conditional release date were awarded at the outset. For the purposes of earning parole eligibility, an inmate with no class I offenses during the review period would receive at least 50% of the good time credits for that period. An inmate with no class I, II, III, or IV offenses was guaranteed to receive at least 80% of the allocated good time credits. The balance of the credits were discretionary and could be awarded or not awarded for failure to participate in a program.

In January 1995, KDOC amended K.A.R. 44-6-124 to its present form. In pertinent part, it provided that "[a] refusal by an inmate to constructively work or participate in assigned programs shall result in the withholding of 100% of the good time credits for that

program classification review period, unless the inmate is determined by the facility health authority to be physically or mentally incapable of working or participating in a particular program or detail." K.A.R. 44-6-124(g)(6). K.A.R. 44-6-142 was also amended and now provides that, rather than all available good time credits being presumed earned for purposes of conditional release, such credits were now subject to being earned as the sentence progressed, in the same manner as used for the calculation of parole eligibility.

In addition to these regulatory amendments, the Secretary of Corrections also revised the Department's internal management policies and procedures. Under IMPP 11-101, KDOC defined a new privilege incentives level system, the factors necessary to move up or down an incentive level, and the supervision and privileges associated with each level. This revised IMPP 11-101 is called the "Level System," and it created a system of incentives and privileges to encourage inmates to participate in programs. Under the level system, there are three levels at which an inmate can be classified. Under level 1, inmates can watch the general TV and spend $20 per payroll period at the canteen. Under level 2, an inmate can have a personal TV, and the inmate can spend $80 per payroll period at the canteen. Obviously, the higher the level at which an inmate is classified, the more privileges and liberties the inmate receives. Under IMPP 11-101, if an inmate is assigned to participate in a certain program and the inmate refuses, then the inmate can be moved down an incentive level and lose the privileges associated with the higher level.

In 1995, Bankes participated in a 120-day program plan review by his unit team. He was assigned to participate in SATP. Bankes refused to voluntarily sign the program review or to participate in SATP. Pursuant to K.A.R. 44-6-124, 100% of Bankes' good time credits for this review period were withheld due to his refusal to participate in the assigned program.

At his next program review, the unit team again suggested that Bankes participate in SATP. Bankes continued to refuse to participate in such treatment. Pursuant to K.A.R. 44-6-124, 100% of Bankes' good time credits were again withheld due to his refusal

to participate in SATP. Eventually, Bankes was reclassified, under IMPP 11-101, from a level 2 of privileges and incentives to a level 1, due to his refusal to participate in SATP, and Bankes lost the privileges associated with a level 2.

One of the main reasons Bankes refused to participate in SATP is that SATP requires each offender to "accept responsibility for the offense in which he was involved." In order to voluntarily be admitted into SATP, the program requires that the offender admit guilt to the crime of which he or she was convicted. As the SATP admission document states:

> "This is to confirm that I understand the criteria for being accepted into the S.A.T.P. (Sexual Abuse Treatment Program) at Hutchinson Correctional Facility, which includes an admission of Guilt for my sex crime. I realize that I am being allowed to participate in an evaluation for acceptance into S.A.T.P. with the understanding that I followed through with an Admission of Guilt. This document will serve as my official Admission of Guilt to the following: [space provided for the inmate to write in the crime to which they are admitting guilt]."

Bankes objected to this admission of guilt requirement and refused to participate in SATP because of this requirement. At trial, Bankes denied that he committed the crime. Bankes continues to deny that he committed the crime and is currently pursuing an appeal of his conviction in federal court. According to Bankes, confessing guilt for the purpose of admission into SATP would jeopardize his appeal and subject him to perjury charges based on his testimony at trial.

In addition to requiring an admission of guilt for the crime for which the inmate is convicted, SATP also requires a participant to sign releases allowing the disclosure of confidential information gained by the SATP staff to KDOC personnel, the Kansas Parole Board, and HCF-SATP coordinator and staff.

Further, SATP requires participants to submit to polygraph testing as a part of the "treatment process." An unwillingness to participate in the polygraph testing as a part of the treatment is considered a violation of the program agreement and can result in the termination of SATP treatment. Prior to taking a polygraph test, the SATP participant must provide an admission of guilt in his or her own words, an autobiography, a complete sexual history, and

a complete confidential polygraph questionnaire. The polygraph results are only to be used for therapeutic purposes and are not to be used to determine guilt or innocence.

Finally, SATP requires participants to submit to a plethysmograph examination to evaluate the inmate's sexual arousal intensity and interests. Although the plethysmograph testing is voluntary, if the inmate should refuse to complete the evaluation or fail to cooperate with the evaluation, it will be noted and reported to the SATP treatment team and may constitute grounds for termination from the program.

In 1994, the Kansas Legislature enacted K.S.A. 59-29a01 *et seq.*, the Kansas Commitment of Sexually Violent Predators Act. Under this Act, if KDOC has information about an inmate convicted of a sexually violent offense which indicates that the inmate has a mental abnormality or personality disorder and meets the criteria for a sexually violent predator, then KDOC must give written notice of this information to the Attorney General before the inmate is released from prison so that the Attorney General can evaluate whether the inmate is a sexually violent predator and, if so, pursue commitment proceedings. KDOC is required to turn over this information even if it was gained through SATP. K.S.A. 1997 Supp. 59-29a16; K.S.A. 1997 Supp. 59-29a03.

The effect of the amendments to IMPP 11-101 and K.A.R. 44-6-124 on Bankes has been substantial. Prior to his refusal to participate in SATP, Bankes was assigned to a level 2 incentive level. Under this level, he was allowed his own personal TV and was allowed to spend $80 per pay period at the canteen. However, once Bankes refused to participate in SATP, his incentive level was reduced from a level 2 to a level 1 pursuant to IMPP 11-101. This reduction in incentive level resulted in Bankes losing access to his own personal TV and only being allowed to spend $20 per pay period at the canteen. Further, the amendments to K.A.R. 44-6-124 have affected both Bankes' parole eligibility date and his conditional release date. Prior to the 1993 amendment, his conditional release date was fixed by the presumption that all available good time credits were earned. Thereafter, that date could only be changed if he lost credits for committing offenses. However, under

the 1993 amendment, Bankes became subject to a mandatory loss of 100% of his good time credits for failing to participate in a program. Thus, if he failed to participate, he would stop earning good time credits, and for every good time credit he failed to earn, his conditional release date would be extended. Thus, Bankes is now forced to earn good time credits toward conditional release, whereas under the prior regulations, he could only lose them for his improper behavior. He is also forced to earn good time credits toward parole eligibility, whereas previously he was guaranteed at least a percentage (80%) of available credits should he not have any Class I, II, III, or IV offenses.

The withholding of Bankes' earned good time credits lengthens his sentence for each plan review period he continues to refuse to participate in SATP. Thus far, KDOC's action has lengthened his parole eligible date from November 26, 1994, as of February 9, 1993, to at least November 8, 1998, as of June 21, 1996, assuming he earns all his future good time credits by participation in SATP. His conditional release date has been lengthened from November 11, 2009, at the time of his incarceration, to at least May 5, 2011, as of November 5, 1996, assuming he earns all future good time credits. Bankes' release date, without receiving any future good time credits due to his continued refusal to participate in SATP, is July 21, 2024. This increase in jail time results from his refusal to participate in SATP, which requires him to not only admit to the crime he was convicted of, but to admit to other possible violations of the law by providing a complete sexual history to his SATP therapists. Should Bankes make these admissions, they can be released to law enforcement agencies without any guarantee that they will not be used against Bankes in any future criminal proceeding.

On December 26, 1996, Bankes filed this habeas corpus action in the District Court of Reno County against his unit team members, the HCF warden, and the Secretary of KDOC. In this action, Bankes claims that KDOC's requirement that he admit guilt for the crime of which he was convicted and participate in SATP violates his privilege not to incriminate himself as embodied in the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights. Further, Bankes asserts that

K.A.R. 44-6-124, which mandates KDOC to withhold his good time credits for refusing to participate in SATP, constitutes an ex post facto law by increasing the punishment for a crime for which he had already been convicted. The District Court of Reno County dismissed Bankes' habeas corpus petition for failure to state a claim for which relief could be granted. Bankes appealed.

## I. FIFTH AMENDMENT

"Proceedings on a petition for writ of habeas corpus filed pursuant to K.S.A. 60-1501 are not subject to ordinary rules of civil procedure. To avoid summary dismissal of a K.S.A. 60-1501 petition, allegations must be made of shocking and intolerable conduct or continuing mistreatment of a constitutional stature." *Swisher v. Hamilton*, 12 Kan. App. 2d 183, Syl. ¶ 1, 740 P.2d 95 (1987), *rev. denied* 242 Kan. 905 (1987).

The question of whether K.A.R. 44-6-124 violates Bankes' privilege not to incriminate himself or whether it is an ex post facto law is a question of law. The district court found there was no merit to this question and dismissed Bankes' habeas corpus petition for failure to state a claim. However, "this court's review of conclusions of law is unlimited." *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991). Thus, the district court's conclusions are not binding on this court.

The Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights provide identical language that "[n]o person 'shall be compelled in any criminal case to be a witness against himself.'" The Kansas Supreme Court has ruled that the provisions of § 10 of the Kansas Constitution Bill of Rights grant no greater protection against self-incrimination than does the Fifth Amendment to the United States Constitution. The purpose of the constitutional provisions, both state and federal, is to prohibit the compelling of self-incriminating testimonial or communicative acts from a party or a witness.

The Fifth Amendment not only permits a person to refuse to testify against himself at a criminal trial in which he is the defendant, but also "privileges him not to answer official questions in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."

*Minnesota v. Murphy*, 465 U.S. 420, 426, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984), *reh. denied* 466 U.S. 945 (1984); *Lefkowitz v. Turley*, 414 U.S. 70, 77, 38 L. Ed. 2d 274, 94 S. Ct. 316 (1973). In all such proceedings:

"a witness protected by the privilege may rightfully refuse to answer unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant. . . . Absent such protection, if he is nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution." *Lefkowitz*, 414 U.S. at 78; see *Minnesota v. Murphy*, 465 U.S. at 426.

In *Allen v. Illinois*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986), the defendant challenged the Illinois State Sexually Dangerous Persons Proceedings Act. The defendant was charged with committing the crimes of unlawful restraint and deviant sexual assault. The State of Illinois filed a petition to have the defendant declared a sexually dangerous person under an Illinois involuntary commitment procedure. Two psychiatrists testified at the commitment trial and gave an opinion as to the defendant's sexual dangerousness. Based in part on this testimony, the trial court committed the defendant as a sexually dangerous person. The defendant appealed his commitment to the United States Supreme Court. The Court held that the Illinois proceeding for involuntary commitment of a sexually dangerous person was a civil proceeding, as opposed to a proceeding of a "criminal" nature. Therefore, it concluded, the defendant's Fifth Amendment privilege against self-incrimination did not apply to him during such proceedings; thus, his Fifth Amendment privilege was not violated. However, in upholding the statute, the United States Supreme Court specifically noted that the Illinois Supreme Court had ruled that a person the State attempts to commit under the Act *is protected from the use of his or her compelled* answers in a psychiatric evaluation *in any subsequent criminal case*, as opposed to civil, in which he is the defendant. 478 U.S. at 368.

In Kansas, as in Illinois, commitment as a sexually violent predator is a civil proceeding, not a criminal proceeding. Since the Fifth Amendment does not apply in civil settings, the petitioner's compelled information required by SATP *can* be used against him in

a civil commitment proceeding as a sexually violent predator. The *Allen* case does not allow the use of compelled information in future criminal cases—other sex crimes, perjury, etc.—but it does allow use of the compelled information in future civil cases, such as a commitment for a sexually violent predator.

In view of our ruling this day in *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227 (1998), that the 1993 amendment to K.A.R. 44-6-124(g)(6) violated the Ex Post Facto Clause to the United States Constitution, we follow that decision. Later in this case, we find that many of the defendant's arguments concerning the Fifth Amendment are moot.

The United States Supreme Court has held that the Sexual Predator Act, allowing a person's confinement for treatment as a violent sexual offender, is civil in nature; thus, the Fifth Amendment to the United States Constitution does not apply. We see no valid reason to interpret § 10 of the Kansas Constitution Bill of Rights any differently. This, however, does not end our inquiry. The question remains as to information the defendant must furnish which subsequently can be used against him in a criminal proceeding. The State of Kansas must either give the defendant immunity from prosecution, or be subject to the well-recognized policies behind the privilege of self-incrimination and the legitimate need of governments to protect its children. Thus, if the State coerces a defendant into furnishing possible incriminating testimony by giving a prisoner no choice but to furnish incriminating information or serve a longer sentence for failure to do so, the State may not use that information or its fruits in subsequent criminal proceedings. See *Lefkowitz v. Turley*, 414 U.S. 70; *Allen v. Illinois*, 478 U.S. 364. We again note that the coerced information can be used in a civil proceeding, subject to the rules of evidence.

The housing assignment given to an inmate, his or her custody classification, granting of parole, spending limitations at a canteen, regulation of visiting hours, withholding of good time awards, and regulation of other daily activities which are not atypical and do not pose a significant hardship within a prison, do not involve a liberty interest or violate the defendant's Fifth Amendment right by compelling him to incriminate himself and participate in SATP.

See *Riddle v. Mondragon*, 83 F.3d 1197 (10th Cir. 1996); *Lile v. Simmons*, 23 Kan. App. 2d 1, 929 P.2d 171 (1996); *Gilmore v. McKune*, 22 Kan. App. 2d 167, 915 P.2d 779 (1995); *Davis v. Finney*, 21 Kan. App. 2d 547, 902 P.2d 498 (1995).

In *State v. Imlay*, 249 Mont. 82, 813 P.2d 979 (1991), the question, similar to the one in the case at hand, was whether an inmate could be compelled, as a prerequisite to admission in a sexual therapy program, to admit guilt, where completion of such a program was required in order to allow him to keep his suspended sentence. 249 Mont. at 83. The Montana Supreme Court found that compelling the inmate to do so would cause a Fifth Amendment violation, *absent any grant of immunity for the statements*. 249 Mont. at 91. In so finding, the Montana Supreme Court reasoned:

"Even though the defendant has already been convicted of the crime that he denies, our system still provides, as noted in [*Thomas v. United States*, 368 F.2d 941 (5th Cir. 1966)], for opportunities to challenge that conviction. For example, the defendant still had the right to challenge his conviction, based on newly discovered evidence, or by collateral attack. These are important rights guaranteed to every defendant under our criminal justice system, but would be rendered meaningless if the defendant could be compelled to admit guilt as a condition to his continued freedom. Furthermore, while such a defendant would be foreclosed from invoking the protection of such procedures to establish his innocence, the reliability of an admission of guilt under such circumstances would be highly suspect. In addition, by admitting guilt in this case, the defendant would have to abandon his right guaranteed by the Fifth Amendment, not only as to the crime for which he has been convicted, but also to the crime of perjury. He testified in his own defense during his trial and denied committing the offense with which he was charged." 249 Mont. at 90-91.

Upon analyzing questions in conjunction with an inmate's probation, the United States Supreme Court noted in *Minnesota v. Murphy*:

"Our cases indicate, moreover, that a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, *as long as it recognizes the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination*. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake'. [Citations omitted.]" 465 U.S. at 435 n.7.

Thus, respondents, in administering their Sexual Abuse Treatment Program, can insist that the petitioner admit responsibility,

so long as his or her admission is not used against the petitioner in later *criminal* proceedings.

This is not a terribly satisfactory outcome. Bankes stands convicted of the offense, but maintains his innocence. He would consequently be forced to admit guilt which he does not acknowledge in order to participate in SATP and to keep his level 2 privileges. Whether Bankes and society will benefit from Bankes' treatment under those circumstances is not for the court to decide in this case. However, this situation does not appear to rise to the level of a Fifth Amendment violation; thus, this issue fails.

## II. EX POST FACTO

Bankes argues that K.A.R. 44-6-124 constitutes an ex post facto law. According to Bankes, this regulation imposes an additional punishment on him after he had already been sentenced for the crimes of which he was convicted.

This issue has been decided on this day in *Stansbury*, 265 Kan. 404. To the reasoning in that case, we would add that trial judges are aware of conditional release dates and how they are computed. When the defendant was sentenced, most trial judges would have considered the maximum time the defendant would have to serve in setting the sentence.

For the reasons set forth in *Stansbury*, the application of K.A.R. 44-6-124 by KDOC to Bankes, due to his refusal to participate in SATP, violates the ban on ex post facto laws contained in the United States Constitution. Thus, as to the ex post facto issue only, the trial court's dismissal of Bankes' habeas corpus petition for failure to state a claim is reversed.

McFARLAND, C.J., concurring and dissenting: I dissent from the majority opinion's determination that K.A.R. 44-6-124 constitutes an ex post facto law in reliance upon *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227 (1998). I concur with the balance of the majority opinion.

LOCKETT, J., concurring and dissenting: I dissent from the majority's determination that withholding good time credits from a person who claims to be innocent and will not acknowledge guilt in order to participate in sexual abuse treatment program does not

rise to the level of a Fifth Amendment violation. The majority requires an individual who may or may not be innocent to serve a longer sentence than those who admit guilt. Punishing Bankes for refusing to admit guilt is not violative of Bankes' constitutional rights under the Fifth Amendment, it is violative of Bankes' constitutional equal protection and due process rights under the Fourteenth Amendment.

I concur with the balance of the majority opinion.

ALLEGRUCCI, J., joins in the concurring and dissenting opinion of Lockett, J.