(963 P.2d 1242)
No. 80,524

JEFFREY L. GARNER, *Appellant*, v. MICHAEL A. NELSON, WARDEN, *et al.*, *Appellees*.

—

Opinion filed August 14, 1998.

*Michael G. Coash*, of El Dorado, for the appellant.

*Julie Riddle*, of Kansas Department of Corrections, for the appellees.

Before LEWIS, P.J., PIERRON, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: In 1987, petitioner Jeffrey L. Garner was convicted of aggravated robbery and sentenced to a term of 5 to 20 years in prison. He was apparently placed on parole at some point, but that parole was later revoked, and he is currently incarcerated.

This is a petition for a writ of habeas corpus filed by petitioner under K.S.A. 60-1501. Petitioner alleges the application by the Department of Corrections (DOC) of its amended regulatory scheme concerning earning, withholding, and forfeiting good time credits is an ex post facto law as applied to petitioner. Petitioner's theory is that since he committed his crime prior to the effective date of

the new regulations, those regulations cannot affect him adversely. The trial court held there was no ex post facto violation, and petitioner has appealed.

There have been at least two Supreme Court opinions and two unpublished Court of Appeals opinions issued on this same subject within the last 4 months. Essentially, the opinions state that the application of good time credit regulations to an inmate whose crimes were committed prior to the passage of the regulations is an ex post facto violation if that application disadvantages the petitioner. See *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227 (1998), and *Bankes v. Simmons*, 265 Kan. 341, 963 P.2d 412 (1998). The Court of Appeals decisions are unpublished and will not be cited in this opinion.

In *Stansbury*, the 1993 amendment to K.A.R. 44-6-124(g)(60 was declared to be an ex post facto law as it related to the petitioner in that case.

In *Bankes*, K.A.R. 44-6-124(g)(6) (1995 Supp.) was again declared to be an ex post facto violation of the law as applied to the petitioner in that case.

In this case, petitioner attacks the application of an amended regulation found at K.A.R. 44-6-142. He argues this regulation violates the prohibition against ex post facto laws as applied to him. There is no question that the regulation in question was amended after the date on which petitioner committed his crime, and the penalties that petitioner has suffered for reason of disciplinary violations are based on the amended regulation. However, this is not the same regulation which *Stansbury* and *Bankes* struck down and, for that reason, those two decisions are not absolutely controlling in all particulars.

In addition, the facts in this case are not consistent with *Stansbury* and *Bankes*. In those two cases, the inmate lost good time credits under K.A.R. 44-6-124(g)(6) (1994) and (1995 Supp.), which read as follows:

"A pattern of refusal by an inmate to constructively work or participate in assigned programs *shall* result in the withholding of 100% of the good time credits for that program classification review period, unless the inmate is determined by

the facility health authority to be physically or mentally incapable of working or participating in a particular program or detail." (Emphasis added.)

Both Stansbury and Bankes refused to participate in the DOC's sexual abuse treatment program (SATP) agreement. Under these factual circumstances, the application of K.A.R. 44-6-124(g)(6) was determined to be a violation of the prohibition against ex post facto laws as applied to Stansbury and Bankes.

The record in this case indicates that petitioner is and has been a serious disciplinary problem. He stands convicted of several administrative offenses which, by their nature, can disrupt the operation of the facility. We are aware of the problems which could accrue if transgressions of this nature go unpunished. However, the primary considerations in a case of this nature are the constitutions of the state of Kansas and of the United States of America.

The violations of which petitioner was convicted are as follows:
- 5-1-95—Unauthorized dealing or trading
- 5-3-95—Interference with cell operation and visibility
- 5-31-95—Disrespect to officers
- 7-9-95—Improper use of food
- 7-18-95—Battery of guard
- 10-1-97—Threats and intimidation

Petitioner was convicted of all of the violations listed above and does not, in this proceeding, question the propriety of those convictions. As a result of these convictions, he either had forfeited or had withheld 13 months of good time credit. The question is whether, in the light of *Stansbury* and *Bankes*, the application of the amended regulation relating to the withholding and forfeiting of good time credits was an illegal ex post facto law as it applied to petitioner.

We do not intend to engage in a detailed discussion of the law concerning ex post facto laws. We will, instead, cite portions of Justice Davis' opinion in *Stansbury*, which sets forth the status of the law.

"The United States Constitution's ex post facto prohibition provides: 'No Bill of Attainder or ex post facto Law shall be passed.' U.S. Const., art. 1, § 9, cl. 3; see art. 1, § 10, cl. 1. Its prohibition forbids legislative enactment of any law which imposes a punishment for an act which was not punishable at the time it was

committed or imposes additional punishment to that then prescribed. In order for a law to be considered ex post facto, two critical elements must be present. The law must be retrospective, applying to events occurring before its enactment, and it must disadvantage the offender affected by it. *Weaver v. Graham*, 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981). In *Weaver*, the United States Supreme Court noted:

'Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.' 450 U.S. at 30-31.

"Political subdivisions of a state, or quasi-legislative instrumentalities, exercising delegated legislative power are within the ambit of the Ex Post Facto Clause. 16A C.J.S., Constitutional Law § 409, p. 355. Administrative regulations adopted in accordance with the procedures set forth by the legislature have the force and effect of law in Kansas. See K.S.A. 77-425. This statute provides in part:

'Every rule and regulation other than a temporary rule and regulation which is filed by the state agency in the office of the secretary of state as provided in this act shall have the force and effect of law on and after the date prescribed in K.S.A. 77-426, and amendments thereto, until amended or revoked as provided by law and such amendment or revocation shall have become effective.'

The Kansas Department of Corrections is a state agency. In adopting regulations governing the granting, withholding, and forfeiture of good time credits, it acts as a political subdivision exercising delegated legislative power. As such, its regulations adopted are within the ambit of the Ex Post Facto Clause of the United States Constitution.

"*Weaver* addressed the question of whether a change in Florida's provisions for prison 'gain-time credits' constituted an ex post facto law. The factual situation in *Weaver* is somewhat similar to the case at hand. Under Florida law, inmates were awarded a certain number of gain-time credits automatically simply for avoiding disciplinary infractions and for performing assigned tasks. 450 U.S. at 26. In 1978, however, the system was changed in that the number of gain-time credits awarded automatically was reduced, although extra gain-time credits were available to those inmates who performed meritorious and outstanding work. 450 U.S. at 26-27, 34-35.

"The inmate in *Weaver* argued that this change in regulations constituted an ex post facto law, and the United States Supreme Court agreed. 450 U.S. at 27-28. In reaching this conclusion, the Court noted that the availability of gain time is one determinant in an inmate's prison term and, thus, the prison term is altered when this determinant is changed. 450 U.S. at 32. The Court concluded that the Florida statute was applied retrospectively and further was disadvantageous to the petitioner and those persons similarly situated, saying:

'On its face, the statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison. . . . Here, petitioner is . . . disadvantaged by the reduced opportunity to shorten his time in prison simply through good conduct.' 450 U.S. at 33-34." 265 Kan. at 412-14.

In Syl. ¶¶ 1 and 2, the court in *Stansbury* held:

"The United States Constitution's ex post facto prohibition forbids legislative enactment of any law which imposes a punishment for an act which was not punishable at the time it was committed *or imposes additional punishment to that then prescribed.*"

"Two critical elements must be present for a criminal or penal law to be ex post facto. It must be retrospective, that is, it must apply to events occurring before its enactment, and it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable." (Emphasis added.)

We will deal with the instant matter within the framework mentioned above. We again note that petitioner does not deny that he committed the prison offenses for which he was convicted. He raises no issue as to the constitutionality or fairness of the proceedings which led to his convictions. We have an admitted repeat violator of prison rules and regulations who argues he cannot be punished under the 1995 regulations. The issue, however, is not whether he can be punished but whether he can be punished under regulations passed after he committed his crimes—punishment which disadvantages him.

The record in this case is deficient. The record contains no testimony from any witnesses. However, based on admissions made by the DOC, we believe the ex post facto doctrine will apply in this case if punishment under the 1995 administrative regulations increased the punishment petitioner would have received under the regulations in effect at the time he committed his crime. There is no record indicating whether petitioner would have suffered the same punishment under the prior regulations that he did under the 1995 amendments. We assume that convictions of offenses of the nature involved in this case would have or could have resulted in a loss of good time credits under the regulations in effect on the date he committed his crime. There is no evidence on this ques-

tion; only conclusory statements made by counsel. This is a question which can only be answered by the DOC.

Despite the absence of any testimony on the issue, none of the parties seem to disagree that under the 1995 regulations, petitioner's conditional release date (CRD) was extended. The CRD is defined in K.A.R. 44-6-101(m): "'Conditional release date,' or CR date, means the maximum sentence ending date minus total authorized good time credits not forfeited." In plain English, an inmate must be released when he or she reaches his or her CRD. That date defines the length of the inmate's sentence. Any amendment to regulations passed after the date petitioner committed his crime, which would increase his CRD beyond what it would have been under the regulations at the time he committed the crime, is ex post facto as applied to petitioner.

K.A.R. 44-6-108(c) was in effect when petitioner was sentenced. That regulation stated in part: "To establish the [CRD], good time credits *shall be presumed earned* and *shall be applied to the maximum sentence term first computed.*" (Emphasis added.) The effect of this regulation was that an inmate's CRD was computed based upon a presumption that he or she would earn all good time credits available. These good time credits were applied to an inmate's maximum sentence and were used to compute that inmate's CRD. See K.A.R. 44-6-125(b). Under the regulations in effect at the time petitioner committed his crime, an inmate was not required to earn his good time credits; it was presumed that 100% of his or her available good time credits had been earned.

On March 1, 1995, K.A.R. 44-6-142 was amended and now reads:

"When computing the conditional release date, it shall be presumed that prior to March 1, 1995, 100% of the available good time credits were earned. On and after March 1, 1995, good time credits *shall be awarded on an earned basis pursuant to K.A.R. 44-6-124 for the purpose of determining the conditional release date. The conditional release date shall be based on the controlling maximum sentence. No conditional release date shall be computed for a maximum sentence of life.*" (Emphasis added.)

K.A.R. 44-6-124(b) defines the manner in which an inmate may earn good time credits. In *Stansbury*, the amended K.A.R. 44-6-

124(b) was declared to be an ex post facto law as applied to Stansbury:

"After the adoption of the 1993 amendments to K.A.R. 44-6-124 which expressly applied to the petitioner, 100% of the petitioner's good time credits were mandatorily withheld based upon his refusal to participate in the SATP. See K.A.R. 44-6-124(g)(6). The result in the petitioner's case was to extend the time he would have to serve before being eligible for parole. Thus, the regulation as applied to the petitioner was retrospective in that it applied to events occurring before its enactment and it disadvantaged the offender affected by it. See *Weaver*, 450 U.S. at 29." *Stansbury*, 265 Kan. at 415.

It is our responsibility to enforce and follow recent decisions of the Supreme Court. As we read *Stansbury* and *Bankes*, the application of the 1995 regulations to this petitioner would be an ex post facto violation if they increased the time he would have served had the regulations been applied that were in effect at the time the crime was committed.

There is support in the record for the conclusion that the application of K.A.R. 44-6-142 (1995 Supp.) is ex post facto as applied to this petitioner.

To begin with, we note that in the record are several documents entitled "Kansas Department of Corrections Inmate Data Summary." These documents indicate that the CRD of the inmate on the summaries dated October 29, 1993, June 9, 1994, and November 7, 1994, was August 5, 1997. This indicates that under the regulations in effect prior to 1995, petitioner was to be released from prison on August 5, 1997. As we write this opinion, a year has gone by, and petitioner remains incarcerated.

The same summary sheet dated August 14, 1995, indicates a CRD of February 5, 1998; one dated August 24, 1995, indicates a CRD of May 5, 1998; one dated October 21, 1995, indicates a CRD of July 5, 1998; and the final record, dated April 19, 1996, lists a CRD of September 5, 1998. The DOC indicates that as far as it is concerned, the proper CRD is September 5, 1998.

The record indicates that utilizing the process for forfeiting and removing credits under the regulations as amended in 1993 and 1995, the DOC extended petitioner's CRD from August 5, 1997, to September 5, 1998. This is an increase in petitioner's prison

sentence of 13 months for acts committed while in prison and good time credits forfeited or withheld under the 1993 and 1995 amendments to the regulations in question.

Petitioner argues that under the regulations which should have been applied to his violations, the penalties for those violations, including the forfeiting and withholding of good time credits, would only have affected his parole eligibility date and not his CRD. He argues that under the new regulations, his CRD and his stay in prison were extended. If this is true, the regulation is ex post facto as applied to petitioner under the theories set forth in *Stansbury* and *Bankes*.

Directly on the issue in question are the inmate summary sheets described above. These clearly show that petitioner's CRD was extended from August 9, 1997, to September 5, 1998.

While not evidence, the comments between counsel for the DOC and the trial judge are instructive. In one discussion, we find:

"MS. RIDDLE: Well, Your Honor, I just want to say, do I think this is ex post facto at all? Of course not. What this all comes down to is prior to March of 1995 there was a Kansas Administrative Regulation 44-6-142. And basically the application of that to any inmate in the Kansas prison system was that earned good time credits on their minimum sentence, they earned good time credits on their maximum sentence. Or they would lose it under a forfeiture situation, but the conditional release date would always stay the same.

"In March of 1995 they put a new Kansas Administrative Regulation into effect. That Kansas Administrative Regulation it is assumed that the inmate has earned 100 percent of available good time through March 1st of 1995. From March 1995 forward you are going to go on an earned basis, just as you have to do on your minimum sentence and your maximum sentence. Your conditional release date also is on an earned basis.

"THE COURT: This applies the same across the board? This applies to those presently there and those that would be coming into the system afterwards.

"MS. RIDDLE: Correct. But prior to March of 1995, it was assumed that every inmate had earned 100 percent of available good time credit. They didn't go back and take anything away from any of these inmates. Mr. Garner, Gardner, whatever his name is, had the reports prior to 1995. They were basically not considered in determining conditional release date.

"The regulation comes into effect and Mr. Garner is sitting in prison. Mr. Garner started having problems in prison. Working backwards; on September 23d of 1997 he got written up for threatening and intimidating any person. He was

sentenced to 10 days in disciplinary seg and fined $10.00. Good time was withheld from his sentence.

"THE COURT: Now, what would have happened if the old regulation had been in effect when he did this?

"MS. RIDDLE: Then it wouldn't have affected the conditional release date. It wouldn't have affected the CR date. It wouldn't have.

"THE COURT: Okay.

"MS. RIDDLE: On July 2d of 1995, he was found guilty of battery. He lost 6 months of good time. Got some disciplinary seg and $20.00 fine. On May 29, 1995, threatening or intimidating any person. He was sentenced to 21 days of disciplinary seg. Once again good time was withheld, not forfeited.

"On July 4th of the [*sic*] 1995 he picked up a disruptive behavior. Good time was withheld, not forfeited. May 18th of 1995 he got disrespect. He got 14 days of disciplinary segregation and good time was withheld. May 2d, 1995 he got interference with cell operation and visibility. Good time was withheld.

"On April 13 of 1995, he got a violation of unauthorized dealing in trading. He was sentenced to a fine, plus good time withheld. And these are his disciplinary cases from March 1st, 1995 to present. He has a loss of 13 months of good time total. Either in between withholding of good time or because of the disciplinary reports or forfeiture of good time.

"THE COURT: Now, *had the old statute been in effect and had remained in effect, he would sail out of here on August the 4th, 1997, and it would have been as if he had received no penalties other than the parole eligibility date, time in the hole, for whatever it is he did.*

"MS. RIDDLE: *Right.*

"THE COURT: Or when it comes to his conditional release date, yes." (Emphasis added.)

It is apparent from this discussion that in disciplining petitioner under the prior regulations, his CRD would not have been affected. The attorney for the DOC has admitted that under the old regulations, petitioner's CRD would not have been affected by his violation of prison rules. Under the newer regulations, the offenses extended the CRD by 13 months.

While these comments may not be evidence, we assume that the attorney for the DOC knew what she was talking about, and we will continue to assume that absent evidence to the contrary.

The DOC responds to all of this by arguing that its new regulations are not retrospective because they presume that all good time credits prior to March 1, 1995, were earned and that only after March 1, 1995, was it that the new credits must be earned.

The result, they argue, is that any withholding of credits is due only to future conduct. The DOC also suggests that the changes do not impose additional punishment because petitioner still has the opportunity to earn the same number of good time credits as before. This argument was rejected by the United States Supreme Court in *Weaver v. Graham*, 450 U.S. 24, 28, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981), where the court said:

"The critical question is whether the law changes the legal consequences of acts completed before its effective date. In the context of this case, this question can be recast as asking whether [the Florida statute in question[ applies to prisoners convicted for acts committed before the provision's effective date. Clearly, the answer is in the affirmative." 450 U.S. at 31-32.

In this case, it is equally clear that the 1993 and 1994 regulations apply to inmates convicted of acts committed before the provisions' effective date.

In the *Weaver* case, the State of Florida argued that there were added opportunities for special gain-time credits under the new law, that these had the effect of increasing the availability of gain-time deductions, and, as a result, individuals like Weaver were not disadvantaged. The Court acknowledged the new laws' expanded opportunities for special gain-time deductions and the legislature's intent to promote rehabilitation and to increase incentives for productive conduct. 450 U.S. at 34-35. However, the Court noted:

"[N]one of these provisions for extra gain time compensates for the reduction of gain time available solely for good conduct. The fact remains that an inmate who performs satisfactory work and avoids disciplinary violations could obtain more gain time per month under the repealed provision, . . . *than he could for the same conduct under the new provision* . . . . To make up the difference, the inmate has to satisfy the extra conditions specified by the discretionary gain-time provisions. . . . Thus, the new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment. This result runs afoul of the prohibition against *ex post facto* laws." (Emphasis added.) 450 U.S. at 35-36.

In this case, on the date petitioner committed his crime, the regulations granted him an automatic award of all statutorily available good time credits available for his CRD and set his CRD on that basis. Under the new regulations, the CRD awarded was taken

away, and petitioner's CRD was extended. This result violates the prohibition against ex post facto laws. Petitioner committed his crime prior to 1993 and 1995, and an application of regulations passed after that date, which is retrospective and which disadvantages petitioner, is a violation of the prohibition against ex post facto laws.

It is perfectly clear from the comments made by the DOC's counsel that had petitioner been disciplined under the regulations in effect at the time he committed his crime, the only matter affected would have been his parole eligibility time. According to the attorney for the DOC, the regulations which were in effect at the time petitioner committed his crime would not result in an extension of petitioner's CRD in the punishment of the disciplinary violations indicated. We hold that K.A.R. 44-6-142 (1995 Supp.) is an ex post facto law as applied to petitioner and is, therefore, void as to petitioner. This result is dictated by the Supreme Court decisions in *Stansbury* and *Bankes*. In addition to those decisions, we have considered *Spradling v. Maynard*, 527 F. Supp. 398 (W. D. Okla. 1981).

Since our decision is based primarily on comments of counsel, we are required to remand this matter for an evidentiary hearing in which we instruct the trial court to determine the following: What would petitioner's CRD be if the good time credits forfeited and withheld by the DOC under K.A.R. 44-6-142 were forfeited and withheld under the regulations in effect on the date petitioner's crime was committed? If the CRD computed above shows that petitioner's CRD is in the past, petitioner shall be released forthwith and the trial court shall so order.

We have concern that the decisions referred to in this opinion may have left the DOC without authority to punish disciplinary violations. However, we conclude they do not do so.

K.A.R. 44-6-107, last amended in 1993, provides in part:

"(a) The statutes constituting the substantive law in effect at the time the crime is committed shall apply to compute the sentence term and the release dates. No subsequent change in the statute constituting substantive law shall be applied if that law adversely affects the inmate. Changes in statute constituting substantive law which benefit the inmate may be applied to compute the inmate's

sentence term and the release dates, but shall not be required to be applied except in the computation of parole eligibility. Parole eligibility shall be computed by applying the statute in effect at the time the inmate committed the crime for which imprisoned unless subsequent changes in the statute provide an earlier parole date. If the amendment would yield an earlier parole eligibility date, that amendment shall be applied. Statutes establishing the formula for computation of parole eligibility shall be considered substantive law and not procedural law.

"(b)  *Any statute or regulation that has been repealed or revoked shall continue to apply to sentences of inmates when other statutes, regulations or the principles of constitutional law require its terms to be applied to that inmate,* or when law permits its continued application and the policy of the department of corrections is to continue its application for reasons of fairness or economy." (Emphasis added.)

The regulation appears to solve the problem presented in this action. The regulations as amended in 1993 and 1995 cannot be used to forfeit or withhold good time credits as to petitioner because they were not in effect at the time he committed his crime. The situation is covered by K.A.R. 44-6-107(b). The statute or regulation in effect at the time petitioner committed his crime shall continue to apply to petitioner's sentence.

The DOC can only take away or withhold good time credits of petitioner under the regulations in effect at the time petitioner committed his crime. Those regulations, even though repealed, remain in effect as to petitioner by virtue of K.A.R. 44-6-107. This may present a difficult and complex situation through the DOC, but it is required by the United States Constitution. Accordingly, we hold that in order to take away or withhold good time credits from an inmate whose crime or crimes were committed prior to the effective date of the amended regulations, the DOC must act under the regulations in effect at the time the inmate committed his or her crimes. The application of amended regulations that disadvantage the petitioner are ex post facto laws and, as such, are barred by the Constitution.

Under the facts, petitioner reached his CRD in August 1997 and remains incarcerated 1 year later. As pointed out above, we reverse the decision of the trial court and remand for determinations of

the issues set forth in this opinion. We advise the trial court to resolve these questions forthwith.

Reversed and remanded.