(6 P.3d 933)

No. 83,428

GEORGE THOMAS, *Appellee/Cross-appellant*, v. ROBERT D. HANNIGAN, *et al.*, *Appellants/Cross-appellees*.

—

Opinion filed June 9, 2000.

*Jon D. Graves*, special assistant attorney general, of Kansas Department of Corrections, for appellant.

*Sam S. Kepfield*, of Legal Services for Prisoners, Inc., of Hutchinson, for appellee.

Before LEWIS, P.J., ROGG, S.J., and JOHN J. BUKATY, JR., District Judge, assigned.

ROGG, J.: The State appeals the district court's ruling that George Thomas was entitled to a credit on his aggregate sentence based on the provisions of K.S.A. 1979 Supp. 21-4608(3)(e). Thomas appeals the district court's denial of his motion for clarification regarding appropriate application of the credit.

Thomas has been continuously under the supervision of the Department of Corrections (DOC) since his initial sentence in 1980. He was sentenced on three separate occasions. The second and third sentences were for crimes committed while on parole.

On October 24, 1980, Thomas received a 3- to 10-year controlling sentence for a December 6, 1979, burglary and theft. The journal entry provided "that for the purpose of computing defendant's sentence, his parole eligibility and conditional release dates thereunder, that such sentence shall be computed from: October 12, 1980."

On July 20, 1990, Thomas pled guilty to a June 6, 1990, robbery and received a 5- to 20-year sentence, later changed to a 3- to 10-year sentence. His sentence began on June 7, 1990, approximately 9 years and 8 months after the first sentence began. The two sentences ran consecutively, aggregating to a 6- to 20-year controlling term.

Then in 1993, Thomas received a 4- to 10-year sentence for a May 14, 1992, robbery. The journal entry provided for a sentence begins date of August 15, 1993. The third sentence ran consecutive to the first and second, aggregating the three sentences to a 10- to 30-year controlling sentence. According to the DOC, Thomas' maximum release date was August 15, 2020.

When Thomas committed his first crime, K.S.A. 1979 Supp. 21-4608(3)(e) provided:

"When consecutive sentences are imposed which are to be served consecutive to sentences for which a prisoner has been on probation, parole or conditional release, the parole eligibility, conditional release and net maximum dates shall be

adjusted by the amount of time served on probation, parole or conditional release."

This section of the statute was amended in 1983, in which the right to a credit on the aggregate sentence for time served on probation, parole, or conditional release was deleted. L. 1983, ch. 111, § 1; K.S.A. 1983 Supp. 21-4608(6)(e). The plain and unambiguous language of the amended statute indicates the relevant provision was applicable to persons convicted of crimes committed on or after January 1, 1979, to the extent it was not in conflict with K.S.A. 22-3717. Although not relevant to the present case, the statute was later amended to provide for a credit for time served in a residential facility while on probation or assignment to a community correctional residential services program. L. 1989, ch. 92, § 24.

Based on K.S.A. 1979 Supp. 21-4608(3)(e), Thomas filed a grievance alleging the Hutchinson Correctional Facility records department was miscalculating his controlling sentence. A May 27, 1998, interdepartmental memorandum informed Thomas his sentence was being computed correctly based on K.A.R. 44-6-141 and K.A.R. 44-6-101(k). However, the district court disagreed and determined Thomas was entitled under "K.S.A. [1979 Supp.] 21-4608(e) to credit for time served on parole in 79 CR 2166 against his aggregated sentences."

The trial court denied the State's motion to alter, amend, or vacate judgment, which alleged the effect of amendments to K.S.A. 21-4608 did not result in an ex post facto application of the law. The court rejected the argument Thomas was merely subjected to enhanced penalties on his new charges as a result of his habitual or repeat violations. Furthermore, Thomas' motion for clarification, seeking a determination that the 7 years he spent on parole be subtracted to determine his conditional release date, was likewise denied. Both parties timely appealed.

Whether the district court erred in allowing a credit for time served on parole is a question of statutory interpretation and this court's review is de novo. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

The Ex Post Facto Clause of the Constitution forbids enactment of any law which punishes an act which was not punishable at the

time it was committed, imposes additional punishment to that then prescribed, aggravates the crime, or alters the legal rules of evidence. The threshold question under ex post facto analysis is whether the amendment to the statute is substantive or procedural in nature and, consequently, whether it applies prospectively or retroactively. *State v. Moon*, 15 Kan. App. 2d 4, 8, 801 P.2d 59, *rev. denied* 248 Kan. 998 (1990).

Through 1982 amendments to K.S.A. 21-4608, the legislature mandated consecutive sentences as a harsher penalty for crimes committed by a defendant while on probation, parole, post-release supervision, or conditional release. See L. 1982, ch. 150, §§ 3-5; *Blomeyer v. State*, 22 Kan. App. 2d 382, 385, 915 P.2d 790, *rev. denied* 260 Kan. 991 (1996). Prior to 1982, the imposition of concurrent or consecutive sentences in all criminal cases was placed within the sound discretion of the trial court. See *State v. Reed*, 237 Kan. 685, 687, 703 P.2d 756 (1985). The 1982 amendment to K.S.A. 21-4608, mandating consecutive sentences in certain criminal cases, was enacted in response to public concern for felonies committed while a defendant was on release for a prior felony. 237 Kan. at 687.

The statute deals with multiple sentences, and sentencing credit thereunder depends upon the circumstances. Where sentences are imposed to be served consecutive to sentences for which a prisoner has been on some form of supervised release, time spent on such release is not credited as service on the aggregate sentence. L. 1989, ch. 92, § 24; *State v. Williams*, 18 Kan. App. 2d 424, 426-27, 856 P.2d 158 (1993).

There appears to be no question this is a substantive law because it prescribes punishment for a criminal act. *Chiles v. State*, 254 Kan. 888, 896, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994). A substantive law is retrospective if it changes the legal consequences of acts completed before its effective date. *State v. Moon*, 15 Kan. App. 2d at 8. The relevant amendments to 21-4608 do not alter the penalty provisions applicable to Thomas' underlying 1979 crime. Rather, they serve as an enhanced penalty provision for new crimes completed while he was on parole. In effect, the 1983

amendments to 21-4608 do not apply to a given case until a second or subsequent offense occurs.

In support of its position, the State directs this court to an analogous case, *Wishteyah v. Kansas Parole Board*, 17 Kan. App. 2d 480, 838 P.2d 371 (1992), where a prisoner contended the Kansas Parole Board's implementation, subsequent to his conviction and incarceration, of conditional release policies constituted a violation of the Ex Post Facto Clause. At the time the crimes were committed, the Board had an unwritten policy regarding post-release conditions requiring released individuals to not violate state or federal law. The revised policy placed conditions and requirements on releases regarding travel, owning weapons, use of narcotics, as well as associating with certain individuals engaged in crime. Wishteyah's conditional release was revoked because he violated conditions of release based on the new policy. He argued the revised conditions violated the Ex Post Facto Clause because they applied retrospectively to the crimes for which Wishteyah was convicted and incarcerated, which occurred prior to the enactment of the conditional release policies. *Wishteyah*, 17 Kan. App. 2d at 481.

This court disagreed, finding the actions for which Wishteyah's conditional release was revoked occurred after the Board revised its policy. While he may have been disadvantaged by the amendment, the provision did not attach legal consequences to a crime committed before the law took effect. Rather, the misconduct for which Wishteyah was punished occurred after the effective date of the amendment. 17 Kan. App. 2d at 482-83.

*U.S. v. Glover*, 153 F.3d 749 (D.C. Cir. 1998) is persuasive. When Glover committed his prior crimes, they were considered misdemeanors, yet they carried the possibility of more than 1 year's imprisonment. Until 1994, the crimes would have been considered misdemeanors for federal sentence enhancing purposes. However, the federal law defining a felony drug offense was changed in 1994, thereby encompassing Glover's prior offenses. If his prior convictions had not been considered felony offenses, when sentenced for his subsequent crime, Glover would have faced statutory terms of 5 to 40 years' imprisonment for his 1995 crime. Based on the afore-

mentioned amendment, Glover argued the Ex Post Facto Clause was violated. The court held:

"Despite Glover's characterization, the 1994 'reclassification' of his prior crimes did not add a new penalty for those crimes themselves. Like other repeat offender statutes, it did nothing more than prospectively define new, more drastic consequences if Glover committed a further crime in violation of § 841(b). Because the provision expanding the category of prior offenses that would prospectively be considered 'felony drug offenses' was passed in 1994, a year before the first drug transaction at issue here, Glover had 'fair warning,' see *Miller v. Florida*, 482 U.S. 423, 430, 96 L. Ed. 2d 351, 107 S. Ct. 2446 (1987), that he would face stiffer penalties as a repeat offender if he committed another drug-related offense. Those penalties were punishments for his 1995 crimes, not for his prior crimes, and therefore do not violate the Ex Post Facto Clause even though the federal statute labeled the prior convictions differently than did the states." 153 F.3d at 757-58.

While factually distinguishable, the rationale employed by the court applies equally to the facts of this case. The 1983 amendments to 21-4608(3)(e) did nothing more than prospectively define new, more drastic consequences if Thomas committed another crime. The amendments were in effect some 5 to 6 years prior to Thomas' second conviction. Like Glover, Thomas had fair warning he would face stiffer penalties if he committed another offense while on parole, and the increased punishment he received was triggered by subsequent conduct that was itself a crime.

Thomas' case can be distinguished from recent Kansas cases finding ex post facto violations. *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227 (1998); *Bankes v. Simmons*, 265 Kan. 341, 963 P.2d 412 (1998). In *Stansbury* and *Bankes*, the amendment to the regulation in question forced the prisoners to earn good time credits previously awarded automatically under the old law. For each credit not earned, their conditional release dates were extended. Additionally, the amended regulation actually forced them to engage in a rehabilitation program or risk the loss of good time credits which would have automatically been earned under the old system. To the extent the amendment adversely affected the prisoners' conditional release and parole eligibility dates, the new law constituted an ex post facto violation. 265 Kan. at 353.

In *Garner v. Nelson*, 25 Kan. App. 2d 394, 963 P.2d 1242 (1998), Garner argued an amended regulation violated the prohibition

against ex post facto laws as applied to him because the penalties he suffered for reason of disciplinary violations while incarcerated were based on the amended regulation adopted after he began to serve his sentence.

The DOC argued that any withholding of credits was due only to future conduct, not the prior conviction. This court rejected the DOC's argument, noting that the amended regulations applied to inmates convicted of acts committed before the provisions' effective date. The court stated:

"In this case, on the date petitioner committed his crime, the regulations granted him an automatic award of all statutorily available good time credits available for his CRD [conditional release date] and set his CRD on that basis. Under the new regulations, the CRD awarded was taken away, and petitioner's CRD was extended. This result violates the prohibition against ex post facto laws. Petitioner committed his crime prior to 1993 and 1995, and an application of regulations passed after that date, which is retrospective and which disadvantages petitioner, is a violation of the prohibition against ex post facto laws." 25 Kan. App. 2d at 403-04.

In the present case, the credit Thomas was allegedly entitled was contingent upon a subsequent offense and a consecutive sentence. The contingency did not occur until 1990, and the right to a credit had long since been abrogated. Unlike Stansbury, Bankes, or Garner, Thomas was not required to earn credit he was entitled to under the old law in order to obtain an earlier conditional release or parole eligibility date. All that was required of Thomas was that he remain offense free while on parole, and he had ample notice that a subsequent offense would result in a forfeiture of street-time credit. Thomas placed himself in this predicament by committing new crimes while he was on parole. The punishment he received was for his new crimes and, therefore, does not violate the Ex Post Facto Clause even though the amended statute once allowed for a credit on the aggregate sentence.

Affirmed in denying Thomas' motion for clarification of judgment and reversed as to the granting of credit for time served on parole.

LEWIS, J.: I agree with the trial judge and dissent from the majority decision.

Thomas was first convicted in 1980. At that time, K.S.A. 1979 Supp. 21-4608(3)(e) provided that in serving any sentence imposed consecutive to the 1980 sentence, Thomas would be entitled to credit on the new sentence for time served on parole or probation from the original sentence.

If I understand the facts correctly, Thomas spent most, if not all, of the time from his original sentence on probation or parole.

In 1990 and 1993, Thomas was convicted of new crimes and these sentences were imposed consecutive to his first sentence.

In 1983, the legislature amended K.S.A. 21-4608(3)(e) and deleted the provision giving credit for time served on probation or parole.

Thomas argues that he is entitled to credit for time served on probation or parole as mandated by the law in effect on the date of his sentence. The question is whether the legislature can take away credits earned by Thomas under the law as it existed when he was convicted.

The majority states that the amendment in 1983 of 21-4608(3)(e) eliminated credits earned by Thomas under the law as it existed when he was originally sentenced.

I disagree. Thomas, when convicted in 1980, was, under law, entitled to credit on any new consecutive sentence for time served on parole from the original sentence. I do not agree that the legislature can take away credits already earned or guaranteed by the law in effect at the time of the conviction. I am unable to rationally distinguish this case from *Stansbury v. Hannigan*, 265 Kan. 404, 960 P.2d 227 (1998); *Bankes v. Simmons*, 265 Kan. 341, 963 P.2d 412 (1998); or *Garner v. Nelson*, 25 Kan. App. 2d 394, 963 P.2d 1242 (1998).

In those decisions, it was held that the Department of Corrections could not change its regulations and take away good time credits already earned under the regulations that existed at the time of the petitioner's conviction. I would apply the same reasoning to this case to hold that the legislature cannot take away credit earned under the law as it existed at the time of Thomas' original convic-

tion. I would affirm the trial court's decision on credit for time served on parole.