No. 85,952

JOSEPH L. ANDERSON, *Appellant*, v. L.E. BRUCE, *et al.*, *Appellees*.

(50 P.3d 1)

Opinion filed July 12, 2002.

*Randall H. McEwen*, of Hutchinson, argued the cause and was on the brief for appellant. *Joseph L. Anderson*, appellant, was on separate briefs pro se.

*Jon D. Graves*, special assistant attorney general, Kansas Department of Corrections, argued the cause and was on the briefs for appellees.

The opinion of the court was delivered by

LOCKETT, J.: Joseph Anderson appeals the Court of Appeals' affirmance of the district court's denial of his K.S.A. 2001 Supp. 60-1501 petition. See *State v. Bruce*, No. 85,952, unpublished opinion filed October 12, 2001. Anderson claims (1) the district court erred in finding he was not entitled to credit for time spent on parole on a prior offense; (2) application of K.S.A. 21-4608(f)(5)

to the prior offense violated the Ex Post Facto clause of the United States Constitution; and (3) the district judge erred in finding Anderson was not entitled to have his present sentence unaggregated for sentence computation purposes after serving the maximum time on his 1979 offense.

In January 1980, Anderson was sentenced to 5 to 20 years on one count of aggravated robbery committed in October 1979. His sentence commenced October 23, 1979. Prior to completing his sentence, Anderson was paroled on June 28, 1984. In March 1986, Anderson was sentenced to a term of 3 to 10 years on two counts of forgery and one count of possession of cocaine committed in 1985 while he was on parole. Anderson was also sentenced to a term of 3 to 10 years for burglary and theft committed while he was on parole in 1986. Anderson was given 3 years, 6 months, and 22 days of prior penal credit, making his sentence begins date June 7, 1982, on those convictions. These sentences were ordered to run consecutive to each other and consecutive to his sentence for the 1979 offense. At that time, Anderson's controlling term was 11 to 40 years.

Anderson was again paroled. Because of events that occurred while on parole in 1993, Anderson was convicted and sentenced in July 1994 to a term of 1 to 2 years for aggravated false imprisonment and an aggravated weapons violation. Anderson was credited with 6 years, giving him a sentence begins date of February 2, 1988, on this conviction. The 1994 sentence was ordered to run consecutive to the prior sentences. Anderson's controlling term was 12 to 42 years.

Anderson filed a grievance with his Unit Team in November 1999, alleging his sentence had been illegally modified when it was aggregated. Anderson also claimed he had been denied jail credit and credit for time served on parole. The Unit Manager found Anderson's sentence had been correctly calculated. The Warden concurred with the Unit Manager's finding. In December 1999, Anderson appealed to the Secretary of Corrections. The Secretary of Corrections approved the findings of the Unit Team and the Warden.

On January 3, 2000, Anderson filed a petition for writ of habeas corpus in the district court, pursuant to K.S.A. 2001 Supp. 60-1501. Anderson requested that the court order the Department of Corrections (DOC) to grant him credit for time served on parole on his 1979 offense, asserting that the failure to grant him credit violated the Ex Post Facto Clause of the United States Constitution. Anderson also requested that the DOC be ordered to recalculate his controlling term without considering his 1979 offense because that sentence had been satisfied. The DOC filed a response and motion to dismiss. A hearing was held on February 22, 2000. The district court found that Anderson's sentence had been properly computed and denied Anderson relief. A timely notice of appeal was filed.

The Court of Appeals affirmed the district court's decision. The Court of Appeals found *Thomas v. Hannigan,* 27 Kan. App. 2d 614, 6 P.3d 933 (2000), controlling and held that the failure to grant Anderson credit for time spent on parole did not violate the Ex Post Facto Clause. The Court of Appeals also found Anderson's contention that his sentence for the 1979 offense had expired 20 years after his sentence date to be "nonsensical" and without merit. This court granted Anderson's petition for review. Our jurisdiction is pursuant to K.S.A. 20-3018(b).

## CREDIT FOR TIME SPENT ON PAROLE

Anderson contends the district court erred in finding that he was not entitled to credit for the time spent on parole for his 1979 offense. Determination of the amount of credit for time spent on parole is a matter of statutory interpretation. Interpretation of a statute is a question of law over which an appellate court's review is unlimited. *State v. Palmer,* 262 Kan. 745, 748, 942 P.2d 19 (1997). In construing statutes and determining legislative intent, several provisions of an act, *in pari materia,* must be construed together with a view of reconciling and bringing them into workable harmony, if possible. *Unrau v. Kidron Bethel Retirement Services, Inc.,* 271 Kan. 743, Syl. ¶2, 27 P.3d 1 (2001).

## CONFLICT BETWEEN STATUTES

Pursuant to K.S.A. 21-4608(c), a person convicted and sentenced

for a crime committed while on parole for a felony is required to serve the new sentence consecutive to the term or terms for which the person was on parole. See K.S.A. 1992 Supp. 21-4608(3) and K.S.A. 1986 Supp. 21-4608(3).

"When indeterminate sentences are imposed to be served consecutively to sentences previously imposed in any other court or the sentencing court, the aggregated minimums and maximums shall be computed from the effective date of the subsequent sentences which have been imposed as consecutive. For the purpose of determining the sentence begins date and the parole eligibility and conditional release dates, the inmate shall be given credit on the aggregate sentence for time spent imprisoned on the previous sentences, but not exceeding an amount equal to the previous minimum sentence less the maximum amount of good time credit that could have been earned on the minimum sentence. For the purposes of computing the maximum date, the inmate shall be given credit for all time spent imprisoned on the previous sentence. This method for computation of the maximum sentence shall be utilized for all sentences computed pursuant to this subsection after July 1, 1983." K.S.A. 21-4608(f)(4).

See K.S.A. 1992 Supp. 21-4608(6)(d).

At the time Anderson was convicted in 1979 and until 1982, when imposing consecutive sentences to run consecutive to sentences for which the prisoner had been on probation, parole, or conditional release, the prisoner received credit for the time spent on probation, parole, or conditional release. See K.S.A. 1979 Supp. 21-4608(3)(e); K.S.A. 1982 Supp. 21-4608(6)(e). This statute was amended in 1983 to no longer allow credit for time spent on probation, parole, or conditional release under such circumstances. See L. 1983, ch. 111, sec. 1; K.S.A. 1983 Supp. 21-4608(6)(e).

"When consecutive sentences are imposed which are to be served consecutive to sentences for which a prisoner has been on probation, assigned to a community correctional services program, on parole or on conditional release, the amount of time served on probation, on assignment to a community correctional services program, on parole or on conditional release *shall not be credited as service on the aggregate sentence* in determining parole eligibility, conditional release and maximum dates, except that credit shall be given for any amount of time spent in a residential facility while on probation or assignment to a community correctional residential services program." K.S.A. 21-4608(f)(5) (Emphasis added.).

K.A.R. 44-6-107(a) provides in part:

"The statutes constituting the substantive law in effect at the time the crime is committed shall apply to compute the sentence term and the release dates. No

subsequent change in the statute constituting substantive law shall be applied if that law adversely affects the inmate."

Anderson asserts that K.S.A. 22-3722 conflicts with K.S.A. 21-4608(f)(5). This court recently held in *Hudson v. State*, 273 Kan. 251, 42 P.3d 150 (2002), that K.S.A. 21-4608(f)(5), which disallows credit for time spent on parole when calculating parole eligibility, conditional release, and maximum dates, does not conflict with K.S.A. 22-3722, which states that a period served on parole is deemed service of confinement. In reaching this conclusion, the *Hudson* court reasoned that K.S.A. 21-4608(f)(5) involves the event of consecutive sentencing for a sentence to which the prisoner has been on parole, while K.S.A. 22-3722 deals with satisfaction of release. 273 Kan. at 258. The court held that credit for time on parole is a matter of legislative grace and is not a constitutional right. See 273 Kan. 251, Syl. ¶ 2.

Anderson also asserts that K.S.A. 1983 Supp. 22-3717(l) conflicts with the provisions of K.S.A. 21-4608(f)(5). K.S.A. 1983 Supp. 22-3717(l) stated:

"An inmate shall be eligible for parole on the date provided by statute at the time the inmate committed the crime for which imprisoned unless subsequent amendment of the statute provides an earlier parole eligibility date."

Anderson points out that the same legislature that amended K.S.A. 21-4608 to deny prisoner's credit for time spent on parole did not amend K.S.A. 22-3717 to deny credit. K.S.A. 1983 Supp. 21-4608(6) provided:

"The provisions of this subsection relating to parole eligibility shall be applicable to persons convicted of crimes prior to January 1, 1979, but shall be applicable to persons convicted of crimes committed on or after that date only to the extent that the terms of this subsection *are not in conflict with the provisions of K.S.A. 22-3717 and amendments thereto.*" (Emphasis added.)

We note that K.S.A. 1979 Supp. 22-3717 contained no provision similar to K.S.A. 1983 Supp. 22-3717(l). This language was not added until 1982. L. 1982, ch. 137, sec. 3. It must also be noted that this same language was deleted in 1992. L. 1992, ch. 239, sec. 270. At that same time, the legislature added the following language, which is currently contained in K.S.A. 2001 Supp. 22-3717(q): "In-

mates shall be released on postrelease supervision upon the termination of the prison portion of their sentence. Time served while on postrelease supervision will vest."

The reasoning of *Hudson* also distinguishes K.S.A. 1983 Supp. 22-3717(l) and K.S.A. 21-4608(f)(5). As in *Hudson*, K.S.A. 21-4608(f)(5) relates to the events following revocation of parole after conviction for a new offense. K.S.A. 1983 Supp. 22-3717(l), however, deals with parole eligibility.

Additionally, Anderson also makes reference to the fact that the failure to grant him credit for time on parole violated the prohibition against double jeopardy. *Hudson* also addressed this issue and found that failure to grant credit for time on parole under such circumstances does not violate double jeopardy. 273 Kan. at 259.

Thus, there is no conflict between the statutes, and Anderson was not entitled to credit for the time spent on parole for his 1979 offense. We note that it is the law that applied at the time of the commission of a subsequent offense that controls whether an individual receives credit for time spent on parole. *Cf. State v. Martin*, 270 Kan. 603, 608, 17 P.3d 344 (2001). The law in effect in 1986 and subsequently does not grant credit for time spent on parole for individuals being sentenced for a crime committed while on parole. Anderson's sentence was correctly calculated.

## VIOLATION OF EX POST FACTO CLAUSE

Anderson also contends K.S.A. 21-4608(f)(5) violates the Ex Post Facto Clause of the United States Constitution because it inflicts a harsher punishment than the law in effect at the time of the commission of his 1979 offense. As noted previously, prior to 1983 prisoners were credited for time spent on parole in calculating parole eligibility, conditional release, and maximum dates after the commission of a new offense. See K.S.A. 1982 Supp. 21-4608(6)(e).

The United States Constitution's ex post facto prohibition forbids legislative enactment of any law which imposes a punishment for an act which was not punishable at the time the act was committed or which imposes punishment additional to what was prescribed. See U.S. Const., art. 1, § 9, cl. 3; art. 1, § 10, cl. 1. In order for a law to be considered ex post facto, two elements must be

present: (1) The law must be retrospective, applying to events occurring before its enactment, and (2) it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable. *Stansbury v. Hannigan*, 265 Kan. 404, Syl. ¶ 2, 960 P.2d 227, *cert. denied* 525 U.S. 1060 (1998).

The United States Supreme Court stated in *Weaver v. Graham*, 450 U.S. 24, 30-31, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981):

"Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense."

See *Stansbury*, 265 Kan. 404, Syl. ¶ 3.

In reaching that conclusion, the *Weaver* Court recognized that the critical question in determining if there has been an ex post facto violation is whether the law changes the legal consequences of acts completed before its effective date. 450 U.S. at 31. Here, the subsequent aggregation and denial of credit for time spent on parole did not alter the legal consequences of acts completed prior to the 1983 amendment. No additional punishment was inflicted upon Anderson as a result of K.S.A. 21-4608(f)(5); thus, there was no ex post facto violation.

The Court of Appeals previously addressed this issue in *Thomas*. As in this case, when Thomas committed his first crime, K.S.A. 1979 Supp. 21-4608(3)(e) was applicable and prisoners received credit for time spent on parole in calculating parole eligibility, conditional release, and maximum dates. Thomas was subsequently paroled and committed another offense in 1990, nearly 7 years after the amendment to K.S.A. 21-4608 denying credit for time spent on parole. Thomas was denied credit for the 7 years he had spent on parole.

The majority of the *Thomas* court overruled the district court's finding that the failure to credit Thomas for the time spent on parole resulted in an ex post facto application of the law. The majority reasoned that the denial of the credits did not violate the Ex Post Facto Clause because the punishment Thomas received was

for new crimes. 27 Kan. App. 2d at 620. In so holding, the majority distinguished cases in which ex post facto violations had been found regarding regulations that were enacted after the commission of a crime and that adversely affected the defendants' conditional release and parole eligibility dates. See *Stansbury*, 265 Kan. 404; *Bankes v. Simmons*, 265 Kan. 341, 963 P.2d 412, *cert. denied* 525 U.S. 1060 (1998); *Garner v. Nelson*, 25 Kan. App. 2d 394, 963 P.2d 1242 (1998). Judge Lewis dissented in *Thomas*. Judge Lewis viewed the denial of credit as taking away credits already earned or guaranteed by the law in effect at the time of the commission of the underlying crime and was unable to distinguish *Thomas* from *Garner, Stansbury,* and *Bankes. Thomas*, 27 Kan. App. 2d at 621.

In *Stansbury* and *Bankes,* the regulation in effect at the time the petitioners committed the crimes for which they were convicted and sentenced provided that the petitioners would earn 100 percent of their authorized good time credits by remaining free of any prison offenses and by the discretionary grant of good time credits by the unit team manager. The regulation was subsequently amended and both petitioners were denied 100 percent of their good time credits upon their refusal to participate in a sexual abuse treatment program. The amendment had a detrimental effect upon the petitioners' parole eligibility and conditional release dates. This court found that the application of the new regulation to the petitioners violated the Ex Post Facto Clause of the United States Constitution. See *Stansbury*, 265 Kan. 404, Syl. ¶ 7; *Bankes*, 265 Kan. 341, 353.

In *Garner*, as a result of disciplinary violations, the petitioner had suffered an extension of his conditional release date under the amended regulation. The Court of Appeals applied the reasoning in *Stansbury* and *Bankes* to find an ex post facto violation in the application of a regulation concerning the earning, withholding, and forfeiting of good time credits that was amended after the petitioner committed his crime. 25 Kan. App. 2d at 395-400, 404.

The *Thomas* court distinguished *Stansbury* and *Bankes,* reasoning that Thomas, unlike the petitioners in those cases, was not required to earn credit he was entitled to under the old law in order to obtain an earlier conditional release or parole eligibility

date. Instead, Thomas only had to remain offense free while on parole. Under the statutes in effect at that time, Thomas was subjected to forfeiture for the time spent on parole if he committed a new crime while on parole. The *Thomas* court determined that an individual on parole had ample notice that commission of a new crime would result in such forfeiture. 27 Kan. App. 2d at 620.

However, if the petitioner in *Garner* would not have committed disciplinary violations, the amended regulation would not have detrimentally affected his conditional release date. This is similar to the reasoning that if Thomas had not committed a new crime while on parole, he would not have suffered the loss of credit for the time spent on parole. Thus, the *Thomas* court's basis for distinguishing *Stansbury* and *Bankes* does not work to distinguish *Garner*.

*Garner* is, however, distinguishable. In *Garner*, the extension of the petitioner's conditional release date as a result of disciplinary violations goes directly toward the punishment for the crime committed prior to the enactment of the regulation. In *Thomas*, as in this case, the denial of credit for time spent on parole does not increase the penalty on the previous crime but, instead, affects the punishment for the crime committed while the petitioner was on parole.

As was recognized in *Blomeyer v. State*, 22 Kan. App. 2d 382, 385, 915 P.2d 790, *rev. denied* 260 Kan. 991 (1996), the legislative intent of K.S.A. 21-4608(f)(4) was "to impose a harsher penalty by requiring consecutive sentences if a second crime is committed while a defendant is on probation, parole, conditional release, post-release supervision, or assignment to a community correctional services program." See also *State v. Daniels*, 18 Kan. App. 2d 338, 341, 853 P.2d 65, *rev. denied* 253 Kan. 861 (1993) (recognized legislature's clear intent to impose heavier penalties on those committing crimes while on release from custody).

This same reasoning is used in determining the intent of the legislature in disallowing credit for time spent on parole in calculating parole eligibility, conditional release, and maximum dates. The credit for time spent on parole is denied in calculating the aggregate sentence and does not increase punishment on the prior

crime. Any extension of parole eligibility, conditional release, or maximum dates is a direct result of the individual's commission of the new offense and does not increase the defendant's punishment for the prior offense.

In reaching its decision, the *Thomas* court relied upon *Wishteyah v. Kansas Parole Board,* 17 Kan. App. 2d 480, 838 P.2d 371 (1992). In *Wishteyah,* the Kansas Parole Board had an unwritten policy regarding conditions placed on individuals released from prison at the time Wishteyah committed the crimes for which he was incarcerated. The unwritten policy required that the individuals not violate state or federal law while on parole. During Wishteyah's incarceration, the policy was revised, placing conditions and requirements on individuals regarding such things as use of narcotics and alcohol, associating with others engaged in illegal activity, and counseling and aftercare. Wishteyah was conditionally released 6 years after the revised policy went into effect. His conditional release was subsequently revoked for violating these conditions. Wishteyah alleged the application of the revised policy was an ex post facto violation. The *Wishteyah* court held that application of the revised policy to Wishteyah was not an ex post facto violation because the revisions did not apply retrospectively to conduct occurring before the imposition of the conditions. The revisions applied only to Wishteyah's future conduct. 17 Kan. App. 2d at 483.

The *Thomas* court also relied upon *United States v. Glover,* 153 F.3d 749 (D.C. Cir. 1998), which addressed an ex post facto challenge to the reclassification of prior crimes that resulted in a harsher sentence upon commission of additional offenses. At the time Glover committed his prior crimes, the offenses were considered misdemeanors, even though they carried the possibility of imprisonment for more than 1 year after taking into account Glover's criminal history. Until 1994, these offenses were also considered misdemeanors for the purpose of enhancing a federal sentence. However, in 1994, the law was amended to define these offenses as felony offenses. Because Glover's prior offenses were considered felony offenses, Glover received a harsher sentence upon a new conviction than he would have if the prior offenses

had not been reclassified. The United States Court of Appeals for the District of Columbia recognized that a sentencing enhancement based on past offenses is not an additional penalty for prior crimes but is a harsher penalty for the latest crime. 153 F.3d at 757. The *Glover* court stated:

"Despite Glover's characterization, the 1994 'reclassification' of his prior crimes did not add a new penalty for those crimes themselves. Like other repeat offender statutes, it did nothing more than prospectively define new, more drastic consequences if Glover committed a further crime . . . Because the provision expanding the category of prior offenses that would prospectively be considered 'felony drug offenses' was passed in 1994, a year before the first drug transaction at issue here, Glover had 'fair warning,' *see Miller v. Florida*, 482 U.S. 423, 430, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987), that he would face stiffer penalties as a repeat offender if he committed another drug-related offense. Those penalties were punishments for his 1995 crimes, not for his prior crimes, and therefore do not violate the Ex Post Facto Clause even though the federal statute labeled the prior convictions differently than did the states." 153 F.3d at 757-58.

The federal courts' reasoning regarding the version of the sentencing guidelines to apply in cases involving crimes committed over a span of years is also persuasive. See *United States v. Kimler*, 167 F.3d 889 (5th Cir. 1999) (at time of commission of latest offense, defendant had "adequate notice" that his previous offenses would be grouped with his latest offense; thus, defendant's decision to continue illegal activities after revision of guidelines allowed guidelines in effect at commission of latest offense to be applied without ex post facto violation), and *United States v. Bailey*, 123 F.3d 1381 (11th Cir. 1997) (defendant had fair notice that additional crimes would subject him to guidelines in effect at time the latest crime for which he was convicted was committed; no ex post facto violation).

The 1983 amendment denying credit for time on parole went into effect while Anderson was in prison and was in effect for more than 2 years before Anderson committed the new crimes. Anderson had adequate notice that commission of a new offense would result in the denial of credit for time spent on parole. Anderson was not receiving an increased punishment on his prior offense, but an increased punishment on his new offenses because they were committed while he was on parole. Thus, there was no ex

post facto violation in denying Anderson credit for the time spent on parole for his 1979 offense, even though the law in effect at the time of the commission of that offense would have provided for such credit.

## UNAGGREGATING THE SENTENCE

Anderson contends his 1979 offense retains its individuality despite aggregation of sentences and, therefore, upon serving his sentence for the 1979 offense he was entitled to have the offense removed and his parole eligibility, conditional release, and sentence term recalculated. Anderson cites *Price v. State*, 28 Kan. App. 2d 854, 21 P.3d 1021, *rev. denied* 271 Kan. 1037 (2001), and *Blomeyer* for support.

In *Price*, the issue was whether the petitioner was entitled to retroactive conversion under the Kansas Sentencing Guidelines Act (KSGA), K.S.A. 21-4701 *et seq*. Price had been sentenced to 5 to 20 years each on his convictions for aggravated burglary and rape, and his sentence had been aggregated to a term of 10 to 40 years. After serving 20 years, Price contended he had served his sentence for rape and that he was entitled to have his sentence converted. The Court of Appeals disagreed, ultimately finding that Price was ineligible for conversion because he had served his sentence for aggravated burglary first and was still serving his sentence for rape. 28 Kan. App. 2d at 859. The *Price* court declined to adopt the State's argument that Price's sentences were being served simultaneously because they were aggregated. Instead, the court recognized that consecutive sentences are not treated as one when aggregated and the identity of each punishment is preserved. 28 Kan. App. 2d at 857-58.

In *Blomeyer*, the Court of Appeals was also faced with a claim that a prisoner was entitled to conversion of his sentence under the KSGA. Blomeyer had been convicted and sentenced initially to 1 to 5 years for conspiracy to deliver cocaine. While on parole, Blomeyer was convicted of two additional offenses. He was convicted of felony theft, receiving a sentence of 1 to 2 years, and felony burglary, receiving a sentence of 2½ to 8 years. Pursuant to K.S.A. 21-4608(c), the sentences for these offenses were imposed

consecutive to each other and consecutive to his prior offense. In determining whether Blomeyer was entitled to conversion of his aggregated sentence, the Department of Corrections treated the three offenses as aggregated and determined that Blomeyer will still serving time for the first crime, the conspiracy to deliver cocaine, and was not entitled to conversion of his sentence. The *Blomeyer* court held that because Blomeyer had served longer than the 5-year maximum term on his original conviction for conspiracy to deliver cocaine, he was entitled to have his sentence converted. 22 Kan. App. 2d at 386.

At first blush, *Price* and *Blomeyer* seem to support Anderson's contention that after serving the maximum time on his initial offense the sentence on that offense is deemed to have been served. However, upon closer examination, the facts in those cases differ from those in this case and support the DOC's assertion that Anderson is not entitled to recalculation of parole eligibility, conditional release, and maximum dates without inclusion of his 1979 offense.

In *Price* and *Blomeyer*, the issue was conversion of a sentence under the KSGA. Both courts recognized that the legislature intended the aggregation rules under K.S.A. 21-4608(f) to be used in determining the time to be served on multiple sentences, the sentence begins date, and parole eligibility and conditional release dates, and found that the aggregation rules do not apply for purposes of sentence conversion. *Price*, 28 Kan. App. 2d at 858; *Blomeyer*, 22 Kan. App. 2d at 385.

The DOC contends that after aggregation, sentences lose their individual identities and become one sentence. This argument was specifically rejected by the Court of Appeals in *Price*, which stated:

" 'Consecutive sentences may not be treated collectively as one for the aggregate term of all, and the identity of the punishment for each must be preserved.' 24 C.J.S., Criminal Law § 1582. In other words, a consecutive sentence 'is one which commences at the termination of another term of imprisonment to which [an] accused has been sentenced. A prisoner serving the first of several consecutive sentences is not serving the other sentences . . . the prisoner serves only one sentence at a time.' 24 C.J.S., Criminal Law § 1582. See *State v. Bell*, 6 Kan. App. 2d 573, 574, 631 P.2d 254 (1981) (defining 'consecutive sentences' as sentences 'following in a train, succeeding one another in a regular order.'). As a result, on

July 1, 1993, Price was either on conditional release for aggravated burglary or for rape, but not for both offenses." 28 Kan. App. 2d at 858.

Anderson is essentially urging this court to create a mechanism for recalculation of parole eligibility, conditional release, and maximum dates after service of the maximum time on the first offense. The fact that each of Anderson's sentences retains its individual identity, however, does not entitle Anderson to have his sentence unaggregated for the purpose of sentence recalculation. Neither the statutes nor the regulations provide for such a recalculation. The legislature intended the aggregation rules to be used in making this calculation. See *Price*, 28 Kan. App. 2d at 858; *Blomeyer*, 22 Kan. App. 2d at 385. Anderson is required to serve additional time by the inclusion of his 1979 offense in the calculation because that was the legislature's intent.

The judgments of the Court of Appeals and the district court are affirmed.