**Eugene YOUNG, Plaintiff,**

v.

**David McKUNE, et al., Defendants.**

**No. CIV. A. 02–3005–CM.**

United States District Court,
D. Kansas.

July 30, 2003.

Stephen W. Kessler, Rebecca A. Weeks Kansas Attorney General, Topeka, KS, for Defendants.

*MEMORANDUM AND ORDER*

MURGUIA, District Judge.

Plaintiff filed the instant action seeking damages pursuant to 42 U.S.C. § 1983. Specifically, plaintiff claims defendants violated his constitutional rights under the Eighth and Fourteenth Amendments by miscalculating his sentence under a newly amended Kansas Administrative Regulation. This matter comes before the court on defendant Charles Cavenee's Motion to Dismiss (Doc. 24) and defendants David McKune, John Cooling, James Barkley, Tom Vohls, Shelly Turner, and William Cummings's Motion to Dismiss (Doc. 40).

### I. Facts

On November 7, 1986, plaintiff was sentenced in the District Court of Wyandotte County, Kansas to three to ten years for aggravated assault. The sentence was to run consecutively with a previous sentence plaintiff had received in Missouri. In April 1987, plaintiff was released from Kansas to Missouri. In August 1990, plaintiff was paroled by Missouri and released to the Kansas Department of Corrections. In July 1990, plaintiff was paroled by Kansas and was to be supervised by a Kansas parole officer for both his Kansas and Missouri paroles.

In March 1992, both states issued parole violation warrants. In March 1993, plaintiff was arrested in Missouri on the Missouri parole violation warrant. While plaintiff was incarcerated, Kansas caused a parole violation detainer to be placed on him. Plaintiff signed a notice of the detainer in May 1993. Plaintiff was released by Missouri in October 1999 to the State of Kansas.

The issue in this case is whether plaintiff's constitutional rights were violated as a result of the way in which the Kansas Board of Corrections (KBC) applied Kansas Administrative Regulation 44–6–136 in deeming the time plaintiff spent from March 1993 to October 1999 as delinquent time lost on parole (DTLOP).

### A. Pertinent Administrative Regulations

At the time plaintiff committed his crime and was sentenced in Kansas, Kansas Administrative Regulation 44–6–136 provided in pertinent part:

Delinquent time lost on parole (DTLOP).

(a) Delinquent time lost on parole shall be computed from the date on which the secretary's parole violation warrant ...

(b) Delinquent time lost on parole shall only accumulate during the period of time in which the offender is classified as an absconder. *Once the initial warrant has been served, delinquent time shall stop accumulating and time after service of the warrant shall not be considered ....*

Kan. Admin. Reg. 44–6–136 (pre-amendment) (emphasis added). As of May 1, 1998, § 44–6–136 was amended, with the pertinent amendment being subsection (c), which reads as follows:

(c) in spite of the provision of subsection (b), if the parolee or conditional releasee is arrested in another state for reasons other than the Kansas parole violation warrant, *delinquent time shall continue to the date the parolee or conditional releasee is first available to be returned to Kansas.*

Kan. Admin. Reg. 44–6–136 (emphasis added).

Thus, before the regulation was amended, delinquent lost time stopped accumulating once the parole warrant was served. Under the amended regulation, the parolee is assessed delinquent lost time for the

entire period he is out of the State of Kansas if he was arrested for any reason other than the Kansas parole violation warrant. In the instant case, the KBC initially applied the amended version of § 44–6–136 and considered plaintiff's time spent in Missouri, seven years, six months, and one day to be exact, as DLTOP.

### B. Plaintiff's Grievance Process

Plaintiff maintained that the application of the amended version of § 44–6–136 was an ex post facto violation. Plaintiff appropriately filed a grievance at the unit team level. The unit team manager, defendant Barkley, referred the question presented to the chief records officer, defendant Cooling. Defendant Cooling reviewed the records of plaintiff's crimes and sentences. KDC responded to plaintiff's grievance as follows:

> The Court made your Kansas sentence consecutive to your Missouri sentence. The policies and procedures of [KDC] establish that when the Court runs a term consecutive with another state the sentence begins date [sic] of the term is the date the [KDC] takes custody.... [Y]our sentence has been calculated in compliance with K.A.R.'s, IMPP's, and the Regulations of the Secretary.

(Response to Grievance # AA20000510).

Plaintiff then appealed to the Department of Corrections' designee, defendant Cummings, for review at the Secretary's level. Defendant Cummings's response on appeal expressly referred plaintiff to subsection (c) of the amended § 44–6–136, stating that, because plaintiff was " 'arrested in another state for reasons other than the Kansas parole violation warrant,' delinquent time must continue, pursuant to [§ 44–6–136(c) ]." (Response to Appeal of Grievance # AA20000510).

Plaintiff then wrote to defendant Vohls, the Deputy Secretary of Parole Services, who in turn referred the matter to defen-

dant Turner, who was the individual handling interstate compact matters at the time. Defendant Turner responded to plaintiff by describing the application of the amended version of § 44–6–136.

Having exhausted his administrative remedies, plaintiff filed a writ of habeas corpus in the District Court of Leavenworth County, Kansas. The district court found that plaintiff was entitled to have his sentence calculated in accordance with the regulations as they existed at the time he committed his crime (the pre-amended version), rather than in accordance with the amended version. The court stated, "Petitioner committed his crime prior to the 1998 amendment, and an application of the new regulation passed after that date, which is retrospective and which disadvantages petitioner, is a violation of the ex post facto laws." (*Young v. McKune*, Case No. 1HC0005, District Court of Leavenworth County, June 7, 2002). KDC promptly recalculated plaintiff's sentence in accordance with the 1986 version of § 44–6–136 and released plaintiff without further obligation.

### II. Motion to Dismiss Standard

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff, *Witt v. Roadway*

*Express,* 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984).

The court is mindful that plaintiff in this case appears pro se. Accordingly, while the court should liberally construe a pro se plaintiff's complaint, "the court should not assume the role of advocate, and should dismiss claims which are supported only by vague and conclusory allegations." *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992).

### III. Discussion

#### A. Defendant Cavenee's Motion to Dismiss

Defendant Cavenee is employed as a staff attorney by Legal Services for Prisoners, Inc., a private non-profit corporation which provides legal assistance to indigent inmates of the Kansas prison system. Defendant Cavenee represented plaintiff in plaintiff's successful habeas petition before the Leavenworth County District Court. In his Complaint, plaintiff alleges that defendant Cavenee was "grossly ineffective" and that defendant Cavenee's "actions caused unnecessary & dilatory delay, as he unprofessionally and unethically misinformed plaintiff about the law." (Complaint at Count XII). Apparently, defendant Cavenee initially disagreed with plaintiff's assessment of the validity of plaintiff's claim. However, after being appointed to represent plaintiff on plaintiff's habeas petition, defendant Cavenee advocated plaintiff's position and successfully assisted plaintiff in obtaining a court order granting credit for the time plaintiff sought.

Initially, the court points out that the Complaint fails to allege that defendant Cavenee had custody or control over plaintiff or that defendant Cavenee had authority to direct the release of plaintiff. More significantly, the Complaint fails to allege that defendant Cavenee acted under color of state law.

■ Section 1983 establishes that a plaintiff must satisfy two jurisdictional requisites to state an actionable claim. First, a plaintiff must allege the violation of a right "secured by the Constitution and laws" of the United States. Second, a § 1983 plaintiff must show that the alleged deprivation was caused by a person acting "under color" of law. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Although not pled in his Complaint, plaintiff contends in his response brief that defendant Cavenee is employed by Legal Services for Prisoners, Inc. "which was contracted by the Kansas dept. of Corrections to provide Legal Services and assistance to prisoners." (Plaintiff's Response at 2).

Legal Services for Prisoners, Inc. is a private, nonprofit state-funded corporation which provides legal assistance to all indigent inmates in the Kansas prison system. The fact that Legal Services for Prisoners, Inc. receives state funds does not, in and of itself, render its attorneys' conduct as state action. *Adams v. Vandemark,* 855 F.2d 312, 316 (6th Cir.1988) (fact that nonprofit corporation was funded almost entirely by public sources, and was subject to state regulation, without more, was insufficient to make private entity's decision to discharge employees attributable to state for purpose of § 1983 action). Accordingly, a showing that defendant Cavenee worked for Legal Services, Inc. is, without more, insufficient to establish that defendant Cavenee acted under color of state law. *See Jacobs v. Orr,* 1990 WL 120804,

at *1 (D.Kan. July 31, 1990) (holding that defendant, who was employed by Legal Services for Prisoners, was not acting under color of state law within the meaning of § 1983). Defendant Cavenee's Motion to Dismiss is granted.

## B. Remaining Defendants' Motion to Dismiss

Defendants argue that plaintiff's Complaint fails to assert any actions on the part of defendants that would support an alleged constitutional violation. Specifically, defendants claim that plaintiff has failed to set forth facts which would constitute "deliberate indifference" on the part of defendants-a requirement to find liability under the Eighth Amendment. *Hope v. Pelzer*, 536 U.S. 730, 763, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Defendants also contend that plaintiff's Complaint does not assert facts showing the requisite state of mind required to establish a Fourteenth Amendment violation. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("We conclude that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property.").

## 1. Constitutional Violation

The court questions whether plaintiff has established a constitutional violation at all. Plaintiff's entire case rests on the theory that defendants applied the incorrect administrative regulation and that this resulted in a denial of his rights under the Eighth and Fourteenth Amendments. However, notwithstanding the Leavenworth County District Court's opinion, this court is not convinced that defendants' application of newly amended § 44–6–136 violated the ex post facto rule.

█ The ex post facto clause prohibits legislation that inflicts a greater punishment than that available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 41–42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (citing *Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798)). "[C]entral to the ex post facto prohibition is a concern for 'the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.'" *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). "To fall within the ex post facto prohibition ... the law [first] 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.'" *Id.* (quoting *Weaver*, 450 U.S. at 29, 101 S.Ct. 960). "A law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Id.* (quoting *Weaver*, 450 U.S. at 31, 101 S.Ct. 960).

█ In considering an ex post facto claim, this court must focus upon the law in effect at the time of the offense for which a person is being punished. The date of the offense is critical, as the ex post facto clause prohibits "the imposition of a sentence more severe than the punishment assigned by law *when the act to be punished occurred*." *Weaver*, 450 U.S. at 30, 101 S.Ct. 960 (emphasis added). In this case, the calculation of plaintiff's time spent incarcerated in Missouri as DTLOP did not alter the legal consequences of acts completed prior to the 1988 amendment. Rather, the 1988 amendment did nothing more than prospectively define a new, more drastic consequence if plaintiff committed another crime in another state while on parole in Kansas. Here, plaintiff committed a Missouri parole violation, for which Missouri issued a parole violation warrant. Plaintiff was therefore "arrested

in another state for reasons other than the Kansas parole violation warrant," Kan. Admin. Reg. 44–6–136, and the DTLOP assessed was for that reason-the new offense committed in another state while on Kansas parole. The additional penalty is not for having committed the underlying crime, but for committing a second crime.

The amended version of § 44–6–136 was enacted some four years before plaintiff committed his Missouri parole violation. Plaintiff had adequate notice that commission of a new offense in another state would result in DTLOP until such time as plaintiff was first available to be released to Kansas. Application of amended § 44–6–136 did not result in an increased punishment for his prior offense, but an increased punishment for his new offense because that offense was committed while plaintiff was on parole in Kansas. Moreover, there was no credit taken away from plaintiff that was already earned or guaranteed by the law in effect at the time plaintiff committed the underlying crime.

While the court seriously doubts the merits of plaintiff's ex post facto claim, the court need not making a ruling on the issue. The court concludes that, even if plaintiff could establish a constitutional violation, defendants are entitled to immunity.

### 2. Immunity

■ The court first points out that it is unclear whether plaintiff has sued these defendants in their official or individual capacities. However, to the extent plaintiff asserts these defendants were acting in there official capacities, plaintiff's suit is barred.

■ Eleventh Amendment immunity bars actions against a state in federal court, even by its own citizens, unless the state waives that immunity. U.S. Const. amend. XI; *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir.2000). Further-

more, when a suit is brought against state officials in their official capacities, the real party in interest is the state. *Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, these defendants are immune to the extent plaintiff has sued them in their official capacities.

■ Moreover, to the extent plaintiff has sued these defendants in their individual capacities, the doctrine of qualified immunity applies. Qualified immunity protects state actors from liability when acting within the scope of their employment. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides government officials immunity from suit as well as from liability for their discretionary acts. *Mitchell v. Forsyth*, 472 U.S. 511, 526–27, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 644 (10th Cir.1988). The doctrine of qualified immunity serves the goals of protecting public officials "who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

The Supreme Court has established a two-part approach to determine if qualified immunity applies. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court

should ask whether the right allegedly implicated was clearly established at the time of the events in question." *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 516 (10th Cir.1998) (citing *County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). The plaintiff must prove the right was sufficiently clear such that a reasonable official would have understood that his conduct violated the right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). For purposes of this section, the court will assume plaintiff can establish a constitutional violation. Thus, the court must determine whether the constitutional right at issue was clearly established.

Ordinarily, for a law to be clearly established, there should be Supreme Court, Tenth Circuit, or, in this case, Kansas court decisions interpreting the law as plaintiff maintains. *Medina v. City & County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992). In this case, there were no such court decisions-the law was not clearly established that application of the newly amended version of § 44–6–136 violated the constitutional rights of parolees who committed their original crimes before the amendment.

Plaintiff filed his first grievance in January 2000, and the Leavenworth County District Court rendered its habeas decision in June 2000. Thus, the court must determine whether the law was clearly established during this time period.[1]

Clearly no Kansas court had rendered a decision on whether the amended version of § 44–6–136 could be applied to individuals who had committed their underlying crime prior to 1988. It is not necessary, however, for a plaintiff to find a case with exact corresponding factual circumstances. *Murrell v. Sch. Dist. No. 1,* 186 F.3d 1238, 1251 (10th Cir.1999). Rather, the defendants are required to make "reasonable applications of the prevailing law to their own circumstances." *Id.* The court therefore turns to the prevailing law at the time to determine whether defendant's application of that law was reasonable.

The Kansas Supreme Court had recently found ex post facto violations in *Stansbury v. Hannigan,* 265 Kan. 404, 960 P.2d 227 (1998), and *Bankes v. Simmons,* 265 Kan. 341, 963 P.2d 412 (1998). In *Stansbury* and *Bankes,* the regulation in effect at the time the petitioners committed the crimes for which they were convicted and sentenced provided that the petitioners would earn 100 percent of their authorized good time credits by remaining free of any prison offenses and by the discretionary grant of good time credits by the unit team manager. The regulation was subsequently amended, and both petitioners were denied 100 percent of their good time credits upon their refusal to participate in a sexual

---

1. Interestingly, since that time, the Kansas courts have rendered two separate opinions wherein prisoners claimed that application of an amended statute violated the ex post facto clause. In *Thomas v. Hannigan,* 27 Kan. App.2d 614, 620, 6 P.3d 933 (2000), issued just days after the Leavenworth County District Court issued its opinion in the instant case, the Kansas Court of Appeals held that an amended statute that deleted language allowing credit on an aggregate sentence for time served on probation, parole, or conditional release, could be applied to individuals who committed their crimes prior to the amendment. In other words, application of the amended version did not violate the ex post facto clause of the constitution. Similarly, in *Anderson v. Bruce,* 274 Kan. 37, 50 P.3d 1, 7 (2002), the Kansas Supreme Court held that application of the amended statute denying credit for time on parole after the commission of a new offense did not constitute an ex post fact violation. However, the court will not consider these opinions in determining whether the law was clearly established at the time defendants applied amended § 4–6–136 to plaintiff.

abuse treatment program. The court found that the amendment had a detrimental effect upon the petitioners' parole eligibility and conditional release dates and that, therefore, application of the new regulation to the petitioners violated the ex post facto clause of the constitution. Also, in *Garner v. Nelson*, 25 Kan.App.2d 394, 963 P.2d 1242 (1998), the court considered an amended regulation that changed the penalties a prisoner suffered for disciplinary violations while incarcerated. The court held:

> In this case, on the date petitioner committed his crime, the regulations granted him an automatic award of all statutorily available good time credits available for his CRD [conditional release date] and set his CRD on that basis. Under the new regulations, the CRD awarded was taken away, and petitioner's CRD was extended. This result violates the prohibition against ex post facto laws. Petitioner committed his crime prior to 1993 and 1995, and an application of regulations passed after that date, which is retrospective and which disadvantages petitioner, is a violation of the prohibition against ex post facto laws.

*Garner*, 25 Kan.App.2d at 403–405, 963 P.2d 1242.

On the other hand, in *Wishteyah v. Kansas Parole Board*, 17 Kan.App.2d 480, 838 P.2d 371 (1992), the court found no ex post facto violation where a petitioner challenged the Kansas Parole Board's implementation, subsequent to his conviction and incarceration, of conditional release policies. At the time the crimes were committed, the Board had an unwritten policy regarding post-release conditions requiring released individuals to refrain from violating state or federal law. The revised policy placed conditions and requirements on releases regarding travel, owning weapons, using narcotics, as well as associating with certain individuals engaged in crime. The petitioner's conditional release was revoked because he violated conditions of release based on the new policy. The petitioner argued that the revised conditions applied retrospectively to the crimes for which he was convicted and incarcerated, which occurred prior to the enactment of the conditional release policies. The court disagreed, finding that the actions for which the petitioner's conditional release was revoked had occurred after the Board revised its policy. The court reasoned that, while the petitioner may have been disadvantaged by the amendment, the provision did not attach legal consequences to a crime committed before the law took effect. Rather, the misconduct for which the petitioner was punished occurred after the effective date of the amendment. 17 Kan.App.2d at 482–83, 838 P.2d 371.

While *Stansbury*, *Bankes*, and *Garner* involved the application of an amended regulation concerning the earning, withholding, and forfeiting of good time credits, *Wishteyah* involved an amended regulation attaching a legal consequence to a newly committed crime. Thus, the court believes that the circumstances in *Wishteyah* are more analogous to the circumstances of this case. Accordingly, the finds that defendants' application of newly amended § 44–6–136 was a reasonable application of the prevailing law to the circumstances in this case. In other words, it was not clearly established in early 2000 that amended § 44–6–136, as applied to individuals who committed their underlying crime before 1988, was considered retrospective in that it changed the legal consequences of acts completed before its effective date.

In sum, defendants interpreted amended § 44–6–136 as applicable to plaintiff. Although this amended regulation could arguably be interpreted differently, the court

holds that defendants are entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that defendant Charles Cavenee's Motion to Dismiss (Doc. 24) and defendants David McKune, John Cooling, James Barkley, Tom Vohls, Shelly Turner, and William Cummings's Motion to Dismiss (Doc. 40) are granted. This case is hereby dismissed.