NOT DESIGNATED FOR PUBLICATION

No. 126,289

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANDREW FORD ENTSMINGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; BRETT A. WATSON, judge. Submitted without oral argument. Opinion filed October 4, 2024. Affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., GREEN and HILL, JJ.

PER CURIAM: Andrew Ford Entsminger appeals the district court's revocation of his probation and imposition of his underlying 32-month prison sentence. He claims that the district court abused its discretion by revoking his probation and imposing his underlying sentence without first imposing intermediate sanctions. But finding no abuse of discretion, we affirm.

1

*Factual and Procedural Background*

Entsminger pleaded guilty to two counts of sexual exploitation of a child in violation of K.S.A. 21-5510(a)(2), a severity level 5 person felony, based on charges committed between May 2019 and October 2020 that he possessed images of children under the age of 18. Entsminger's criminal history score placed him in a border box category for sentencing. The district court made border box findings and sentenced Entsminger to a prison term of 32 months suspended to 36 months of supervised probation. Along with other conditions of probation, the district court ordered Entsminger to continue his sex offender treatment, to follow its recommendations, to have no unsupervised contact with children under 18, and to have no internet usage of any kind until an appropriate monitoring program was installed on his usable electronic devices.

About four months after sentencing, the State requested a hearing to clarify Entsminger's probation conditions related to his internet usage and to address concerns by Entsminger's probation officer. At that hearing, the district court ordered Entsminger to continue using the monitoring application, to refrain from using the incognito mode in any web browser, and to get permission from his probation officer before purchasing or using any new electronic devices.

The State later moved to revoke Entsminger's probation. In an affidavit filed in support of the motion, Enstminger's probation officer, Edna Raub, alleged that Entsminger had accessed the internet without her approval and monitoring. Raub stated that in a polygraph test in December 2022, when asked about his internet usage, Entsminger stated that he used the internet "on his X-Box game system to play live online with other adult players." At the probation violation hearing, Raub testified that Entsminger's sex offender treatment provider had notified her of Entsminger's polygraph test results. They showed that Entsminger had unmonitored internet access on his Xbox

2

and that the monitoring application had blocked Entsminger's attempt to access an unauthorized website called "PureNudism" on his phone or computer.

When Raub asked Entsminger about those results, he admitted that he had used the Xbox to play "Live games" with his friends on the internet, but he denied that he had tried to access the "PureNudism" website. Raub testified that a condition of Entsminger's probation required him to report to her any devices that might have internet connectivity so monitoring software could be installed on that device, but Entsminger never reported his Xbox to Raub until after she got his polygraph test results. Raub also explained that accessing a nudism website violated the terms of Entsminger's probation.

Jacob Koppenhaver, an investigator with the Shawnee County Public Defender's Office, then testified for the defendant. He had examined Entsminger's Xbox and determined that Entsminger had not set the Xbox to automatically connect to online social features when he logged in.

Entsminger testified that he knew his Xbox used Wi-Fi, but he only played Xbox Live games with his adult friends and did not realize that violated the terms of his probation. Entsminger denied accessing any websites which would violate the terms of his probation.

After hearing the testimony and arguments of both parties, the district court found that the State proved by a preponderance of the evidence that Entsminger had violated the terms of his probation by trying to access an unauthorized nudism website and by using his Xbox to access the internet without the permission and monitoring of his probation officer. The district court then revoked Entsminger's probation and imposed his underlying 32-month prison sentence. It found that the conditions of Entsminger's probation prohibiting his internet usage without proper monitoring were necessary to protect public safety.

3

Entsminger timely appeals the disposition of his probation violation.

*Did the District Court Abuse Its Discretion by Revoking Entsminger's Probation and Imposing His Underlying Sentence?*

Entsminger argues that the district court erred by bypassing the statutorily required intermediate sanctions and revoking his probation after finding only technical probation violations related to his unauthorized internet access. Entsminger contends that the district court failed to make particularized findings under K.S.A. 2020 Supp. 22-3716(c)(7)(A) that revocation of his probation served public safety interests. Thus, he asks this court to reverse the district court's revocation of his probation and remand with instructions to either impose an intermediation sanction or make particularized public safety findings.

*Discussion*

This court reviews a district court's revocation of an offender's probation for an abuse of discretion. *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022). Judicial discretion is abused only if (1) no reasonable person would take the view adopted by the district court; (2) it is based on an error of law; or (3) it is based on an error of fact. Entsminger bears the burden of showing such abuse of discretion. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

Once the State establishes a probation violation, the district court has discretion to revoke probation unless the court is otherwise limited by statute. *Tafolla*, 315 Kan. at 328. Entsminger does not challenge the district court's finding that he violated his probation. Thus, the sole issue is whether the district court abused its discretion in revoking Entsminger's probation and ordering him to serve his underlying sentence.

4

Entsminger first contends that the district court misunderstood its legal authority as shown by its statement that whether to revoke probation was "purely within the discretion of the Court." But the record reflects that the district court was refuting defense counsel's argument that the State had the burden to establish that revocation of probation was required:

> "The first is, as to the legal argument. I didn't allow the State to respond to this. I don't think a response is necessary. The proposition that your defense attorney has put forth is now at the disposition stage of the proceedings.
>
> "The State bears the burden of proof, by a preponderance of the evidence, that imposing the underlying sentence is either necessary to protect public safety, or public safety will be otherwise jeopardized. That's not a correct statement of the law. At this point in time, whether or not your probation is revoked or not is purely within the discretion of the Court. The State bears a burden of proof to show that you violated the terms of your probation, but we have handled that matter, separately.
>
> "What remains for the Court, essentially, is a question of, in its discretion, what is the appropriate disposition of the case?"

The district court properly stated the general legal standard that after the State establishes a probation violation, the district court has discretion to determine whether to revoke probation. See *Tafolla*, 315 Kan. at 328.

Entsminger next contends that the court erred by failing to impose an intermediate sanction under K.S.A. 2020 Supp. 22-3716(c)(1)(B). The district court must exercise its discretion to revoke an offender's probation within the statutory framework of K.S.A. 22-3716. The version of the statute in effect at the time of Entsminger's criminal conduct supporting his convictions governs the district court's probation revocation decision. See *State v. Coleman*, 311 Kan. 332, 337, 460 P.3d 828 (2020); *State v. Cole*, No. 122,052, 2020 WL 5996433, at *6 (Kan. App. 2020) (unpublished opinion). Because Entsminger's convictions resulted from acts last committed in October 2020, the 2020 version of

5

K.S.A. 22-3716 applies to his probation revocation. See *Anderson v. Bruce*, 274 Kan. 37, 47, 50 P.3d 1 (2002). Under that statute, a district court may revoke an offender's probation for a felony conviction and impose the underlying sentence after the offender has received at least one two- or three-day intermediate jail sanction. K.S.A. 2020 Supp. 22-3716(c)(1)(C).

The parties acknowledge that the district court did not impose an intermediate sanction here. But Kansas law provides several exceptions to the intermediate sanctioning scheme. One of those provides that a district court may revoke probation without having previously imposed an intermediate sanction if: (1) the court "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2020 Supp. 22-3716(c)(7)(A). If that exception is established, the district court has discretion to determine whether to continue the offender's probation or to revoke it and require the offender to serve his or her underlying prison sentence. See *State v. Brown*, 51 Kan. App. 2d 876, 879-80, 357 P.3d 296 (2015).

The district court invoked the public safety exception here. The only dispute is whether the district court made a sufficiently particularized finding—as the statute requires—that Entsminger's continued probation would jeopardize public safety.

Entsminger claims that the district court's findings were generalized, could apply equally to all probationers, and did not explain why his use of the internet was a public safety concern. The Kansas Supreme Court has held: "The particularity requirement . . . is not met when an appellate court must imply the district court's reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by the bypassed intermediate sanction." *State v. Clapp*, 308 Kan. 976, Syl. ¶ 4, 425 P.3d 605 (2018). Rather, when a statute requires particularized findings "'it must be distinct rather than general, with exactitude of detail, especially in description or

6

stated with attention to or concern with details.'" 308 Kan. at 989-90 (quoting *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 [1992]). This court has added that in the probation revocation context, "[b]road generalizations that equally could apply to all similar cases are not sufficiently particularized." *State v. Duran*, 56 Kan. App. 2d 1268, 1276, 445 P.3d 761 (2019).

We examine the district court's findings in light of that caselaw.

"I was not the Judge who had this case, originally, but I prepared for this hearing by reviewing the records and files in this case. That includes the records and files of the previous proceedings, but it also includes the Affidavit from Officer Hachmeister, who investigated this case.

"And I have to tell you, sir, that what I read in that Affidavit about your conduct, was very, very disturbing to me. You are here because you have been convicted of the crime of sexual exploitation of a child. You were, what we call, presumptive incarceration, at the time of your original sentence, but you were in a border box, which allowed the Court, in its discretion, to place you onto probation. That is, essentially, to give you a chance. You were given that chance.

"Now, these matters that we have discussed today, that formed the basis of your violation of probation, these are the sorts of things that if we took some average person off the street, or even another person on probation, for example, say someone who's been convicted of a drug offense, it would probably be a trifling matter, if, for example, they had accessed the internet through their Xbox, or even accessed a nudist website.

"But, in your case, it is not a trifling matter. It's a very serious matter because of your conduct that was revealed to the Court in the Affidavit, because of the crime that you were convicted of.

"It's unfortunate, and I hate to have to be the one that says this to you, and says it to you in this way, but because of that conviction, you cannot be trusted to do those things. That is the reason why, and there is a rational reason why there are these conditions of your probation. It's because of what you've done before. And it's because we do not feel that we can trust or take your word for it, that you're not up to no good, if you're having unmonitored, unregulated access to the internet.

7

"You've given some testimony, in this case, about your relationship with Ms. Raub, and some testimony indicating that you might not have necessarily been aware of what the rules are. To the extent that this matters, I don't find your testimony credible. And where there's conflict between your testimony and Ms. Raub's testimony, I find it more credible.

"I agree with the State, that I believe that there have been previous proceedings, in this case, which revealed that you were not sincerely taking your orders of probation— or taking your orders of probation seriously. And they relate directly to the kinds of activities that you were engaged in when you committed the underlying offense, that is, your access to the internet.

"And, again, there is some dispute, there's some argument about, well, when you were on the Incognito function of your phone, your conduct was innocent. When you were on your Xbox, you didn't use the social media functions of that device. You were only talking to your friends.

"The problem, sir, is that I simply can't take your word for it. I can't find what you're saying, right now, credible, in light of the criminal conduct that you engaged in. And so I have to judge the severity of the probation violation that you have committed, and determine whether that warrants sending you to prison, considering the fact that this was originally a presumptive imprisonment offense, considering the fact that I believe that, throughout the case, you have not adhered to that condition, and that condition is necessary to protect public safety.

"I find that it is appropriate to impose the underlying sentence against you."

Consistently, the journal entry for Entsminger's probation revocation states: "[Entsminger]'s use of internet poses a danger to public safety in light of his underlying offense/conduct."

These findings are particularized enough to meet the public safety exception. They are not broad generalizations that equally could apply to all similar cases. They are detailed and specific to Entsminger's case. The district court credited Raub's testimony over Entsminger's. The district court found that Entsminger's testimony about playing games only with his adult friends online through his Xbox and his denial that he had tried

8

to access a nudism website, were not credible. Entsminger had been given a chance to succeed on probation, yet he failed and did not take his probation conditions seriously.

The district court found that the conditions of Entsminger's probation that he violated related to internet usage and were necessary to protect public safety, considering Entsminger's convictions for sexual exploitation of a child. Contrary to Entsminger's argument, the district court explained that his unmonitored use of the internet posed a public safety concern because of its similarity to his acts that gave rise to his convictions. Entsminger had pleaded guilty to two counts of sexual exploitation of a child for possessing images of children under the age of 18.

In deciding to revoke probation, the district court relied on a probable cause affidavit from Special Agent Aaron Hachmeister which detailed Entsminger's inappropriate conduct on the internet involving minors. Even though the record does not show that Entsminger, while on probation, contacted minors while using the internet, the district court found that his unmonitored internet access and his attempt to access a nudism website created public safety concerns based on the facts of his underlying offenses. Here, as in *Cole*, even if the district court could have been more expansive in describing the danger Entsminger posed, "the underlying facts were known to all of the participants, and the connection between those facts and the district court's detailed reasoning was unmistakable." 2020 WL 5996433, at *8.

The district court's explanation meets the particularity requirement of the public safety exception to the rule requiring intermediate sanctions. Thus, the district court did not abuse its discretion by revoking Entsminger's probation and imposing his underlying 32-month prison sentence without first ordering intermediate sanctions.

Affirmed.

9